**Thomas Ray SHELTON and wife, Hallie W. Shelton, Appellants,**

v.

**RUSSELL PIPE AND FOUNDRY COMPANY, Alphonso Graham, Belfast Rock Company, James Kelley and G. E. Childress, Appellees.**

Supreme Court of Tennessee.

Sept. 11, 1978.

Walter W. Bussart, Bussart & Adams, Lewisburg, for appellants.

William E. Herod, Manier, White, Herod, Hollabaugh & Smith, Nashville, Fred B. Hunt, Jr., Wilson & Hunt, Shelbyville, for appellees.

OPINION

BROCK, Justice.

This is an action for damages arising out of an automobile accident. The plaintiffs

are the parents of a three year old girl who they allege was severely injured in an automobile accident resulting from the negligence of the defendants. The plaintiff father seeks to recover damages for his own psychic or emotional injury and his wife sues for the loss of her right of consortium.

The complaint alleges that the daughter of the plaintiffs was "thrown through the front glass of the automobile, receiving many serious and disfiguring facial lacerations, requiring extensive plastic surgery, physicians' expenses, pain and suffering and related expenses. Her injuries are of a serious and permanent nature." The gist of the father's complaint, however, is as follows:

"Shortly after hearing of the injuries to his daughter, plaintiff, Thomas Ray Shelton, passed out or fainted at the emergency room of the Lewisburg Community Hospital. He was admitted to the hospital and revived. Since then, he has suffered severe and traumatic emotional distress as the result of the accident and the injuries to his daughter. He attempted to return to his work, but because of nervousness, dizziness, and inability to concentrate or tolerate noise or activity, he is unable to work. He has on at least two occasions fainted at work and was rushed to the emergency room of the hospital. He is unable to tend to his tobacco and other crops on his family farm which in the past produced a significant part of his family income. He is at the time of the filing of this complaint totally disabled because of his psychological injury, and avers that the negligence of the defendants heretofore described and the injury suffered by his daughter are the direct, proximate and procuring cause of his condition and the damages resulting therefrom.

"Plaintiff, Thomas Ray Shelton, avers that the psychic and emotional injuries and difficulties experienced by him were a direct, proximate and foreseeable consequence of the negligence of the defendants, and each of them, and that there was no intervening cause. He avers that he had never experienced any similar difficulties before the date of this accident but was in perfect health."

Mrs. Shelton's claim is as follows:

"Plaintiff, Hallie W. Shelton, avers that because of the negligence heretofore described and the injuries suffered by her husband she has been deprived of the services, enjoyment, company and consortium of her husband and has suffered damages as a result thereof."

Upon motion of the defendants, the trial court dismissed the complaint for failure to state a cause of action upon which relief might be granted. Plaintiffs appealed directly to this Court.

Thus, the question presented upon this appeal is whether the law of this State recognizes a cause of action for damages by one who suffers psychic or emotional injury and resulting physical disability by reason of his learning of, but not visually witnessing, injuries to a close relative which are caused by the negligence of the defendant.

The issue in this case is indistinguishable from the one presented and decided in *Burroughs v. Jordan*, 224 Tenn. 418, 456 S.W.2d 652 (1970). Accordingly, unless we are to depart from it, the decision in the *Burroughs* case must control the disposition of the instant case. In *Burroughs* the plaintiff alleged that her husband and daughter sustained serious personal injuries when an automobile driven by the defendant collided with a truck driven by her husband who was accompanied by her daughter. The plaintiff alleged that the injuries sustained by her husband and daughter were the result of negligence of the defendant. Her complaint disclosed that she was not present when the accident occurred. Nevertheless, she alleged that she was entitled to recover damages because of "her subsequent illness which she alleged resulted from the fright and shock she sustained after she learned of the injuries to her husband and child." *Burroughs v. Jordan, supra,* 456 S.W.2d at 653. The defendants demurred to the plaintiff's complaint on the ground that it stated no cause of action cognizable under Tennessee law. The trial

court sustained the demurrer and the plaintiff appealed to this Court which affirmed upon the authority of *Nuckles v. Tennessee Electric Power Company,* 155 Tenn. 611, 299 S.W. 775 (1927). In its brief opinion, the Court stated:

"In *Nuckles v. Tennessee Electric Power Company* (citation omitted) the facts were that a mother saw her son injured by a street car and sued for physical injuries which she alleged were caused by the fright and shock which resulted from her having seen the accident. The court said:

'We are not aware of any considered decision which holds that there can be a recovery for fright or shock because of danger to another, or injuries upon another in the presence of the plaintiff, even though the person imperiled or injured was near and dear to the plaintiff.

'In other words, to justify a recovery in tort there must be a wrong done to the person or property of the plaintiff. (Citations omitted.) When the defendant endangered and injured the son of the plaintiff it committed no trespass upon the person of the plaintiff, and the plaintiff had no standing to maintain an action for personal injuries.
. . . '

"This rule governs the plaintiff's claim for personal injuries which must be denied." 456 S.W.2d at 653, 654.

It appears to be the rationale of the *Burroughs* and *Nuckles* decisions that although the defendant was negligent in causing personal injuries to another who "was near and dear to the plaintiff" he owed no "duty" to the plaintiff whose psychic or emotional injury was the result of concern for the welfare of the "near and dear" one who was physically injured. Thus, this Court in the *Nuckles* case distinguished its earlier decision in *Memphis Street Railway Company v. Bernstein,* 137 Tenn. 637, 194 S.W. 902 (1917) upon the ground that in the *Bernstein* case the plaintiff, who was allowed to recover for psychic injury brought about by the negligence of the defendant, "was directly threatened and imperiled by the defendant . . . " whereas, the plaintiff in the *Nuckles* case was not physically imperiled or endangered by the action of the defendant but sustained injury only through her concern for the welfare of her child who received serious injury in the accident which the plaintiff witnessed from a safe distance.

Also pertinent here is the decision of the Court of Appeals in *Trent v. Barrows,* 55 Tenn.App. 182, 397 S.W.2d 409 (1965). In that case the defendant negligently operated an automobile so that it violently struck the house of the plaintiff near the front window where the plaintiff was standing. Plaintiff saw the car approaching and retreated from the window but suffered no physical impact other than possible "vibrations of the house." The opinion states that "plaintiff was somewhat shaken but her body was not bruised or injured in any way." The plaintiff sued the defendant alleging that "as a proximate result of this grave shock and the imminent peril created by the outrageous conduct of the defendant plaintiff immediately suffered extreme weakness and sharp pains in her chest which grew steadily worse until on September 21, 1963, plaintiff was hospitalized with the diagnosis of heart attack." It was further alleged that plaintiff had incurred large medical expenses and had suffered intense physical pain and disability. The Court of Appeals held that the plaintiff had stated a cause of action consistent with the holding of this Court in the *Bernstein* case, *supra,* and ordered a trial on the merits. In the course of its opinion, the Court said:

"The question was next considered in *Nuckles v. Tennessee Electric Power Company,* (citation omitted) involving fright but no physical injury to the plaintiff who witnesse[s] an injury to her child. The court affirmed the action of the trial court in sustaining a demurrer on the ground that although the declaration charged that fright resulted in physical injuries there was no breach of legal duty owing the mother, even though the injured person happened to be her child. The opinion indicates no recession from

the *Bernstein* opinion which was cited for the rule that damages may be awarded for physical injuri[es] resulting from fright growing out of [the] breach of duty to the plaintiff." 397 S.W.2d at 411.

It thus appears that the case law of this State permits recovery by a plaintiff for "physical" pain, suffering and disability resulting from fright or psychic shock caused by *fear for his or her own safety* which is brought about by the negligence of the defendant, sometimes referred to as the "zone of danger rule," *Memphis Street Railway Company v. Bernstein, supra, Trent v. Barrows, supra* ; but that a plaintiff may not recover for "physical" pain, suffering and injuries resulting from fright, shock or psychic injury caused by his or her *concern for the welfare of a third person* who is threatened or injured by the negligence of the defendant, *Nuckles v. Tennessee Electric Power Company, supra, Burroughs v. Jordan, supra.*

But, what is the reason for this distinction? It is not enough to say that the defendant owes a "duty" to the first plaintiff and does not owe a "duty" to the second.

"The assumption that there is no duty begs the question. The essential issue is whether the plaintiff's interests are to be afforded protection against the defendant's conduct, and 'duty' is nothing more than a word, and a very indefinite one, with which we state our conclusion." [1]

The courts and legal scholars have considered several factors in determining that a duty exists in the one situation but not in the other. Foremost among these are (1) the foreseeability, or the lack thereof, by a reasonably prudent person that his or her conduct may endanger the particular plaintiff, (2) the foreseeability, or the lack thereof, that serious psychic or emotional injury may result from the particular negligent conduct of the defendant, (3) the fear that vexatious suits and fraudulent claims will result if a duty is recognized, (4) the difficulty of defining liability, of drawing the line, if recovery is to be permitted to a plaintiff who is not physically within the reasonably foreseeable zone of danger created by the defendant's conduct and who claims injury due only to his or her concern for the welfare of another, and (5) the notion that it would be unjust to expand liability for a merely negligent, as distinguished from an intentional, act to include psychic injury to a plaintiff who was not within the zone of danger of physical impact. *See, e. g., Hunsley v. Giard,* 87 Wash.2d 424, 553 P.2d 1096 (1976); *Rodrigues v. State,* 52 Haw. 156, 472 P.2d 509 (1970); *Guilmette v. Alexander,* 128 Vt. 116, 259 A.2d 12 (1969); *Tobin v. Grossman,* 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969); *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968); *Amaya v. Home Ice, Fuel and Supply Co.,* 59 Cal.2d 295, 29 Cal.Rptr. 33, 379 P.2d 513 (1963); *Waube v. Warrington,* 216 Wis. 603, 258 N.W. 497, 98 A.L.R. 394 (1935); W. Prosser, *Handbook of the Law of Torts,* § 54 at 334 (4th ed. 1971).

The only reason assigned by this Court for denial that a duty flowed from the defendant to the plaintiff in the *Nuckles* case, *supra,* was the alleged lack of authority therefor and, in the *Burroughs* case, *supra,* the Court merely followed the *Nuckles* precedent. Now, however, such authority does exist.

The decisional law in this area is presently undergoing substantial change; liability is being expanded. *See, e. g., Dillon v. Legg, supra; Rodrigues v. State, supra; Hunsley v. Giard, supra* ; Restatement (Second) of Torts § 436 (1965); Leibson, *Recovery of Damages for Emotional Distress Caused by Physical Injury to Another,* 15 J.Fam.L. 163 (1976); Note, *Fear For Another: Psychological Theory and the Right to Recover,* 1969 Ariz.St.L.J. 420; Comment, *Negligent Infliction of Mental Distress: Reaction to Dillon v. Legg in California and Other States,* 25 Hastings L.J. 1248 (1974); Annot.: *Right to Recover Damages in Negligence for Fear of Injury to Another, or Shock or Mental Anguish at*

---

1. *Prosser on Torts* § 31 at 184–85 (1941).

*Witnessing Such Injury,* 29 A.L.R.3d 1337 (1970).

In the *Dillon* case, *supra,* the Supreme Court of California overruled its *Amaya* decision which had denied liability for emotional injury suffered by a mother who witnessed an accident in which the defendant ran over her son with a truck. The "rule" denying recovery for emotional and psychic injury to a plaintiff unless he was within the zone of danger was overruled in the *Dillon* case and the court adopted the policy of considering such cases on an *ad hoc* basis, applying "general rules of tort law, including the concepts of negligence, proximate cause, and foreseeability, . . ." 69 Cal.Rptr. at 84, 441 P.2d at 924. Applying such general rules, the court concluded that a mother who had witnessed an automobile accident in which her infant daughter was run over and killed had a cause of action against the negligent driver for emotional injury suffered by the mother.

The California courts have had considerable difficulty applying the *Dillon* doctrine. *See Parsons v. Superior Court for Monterey County,* 81 Cal.Rptr. 506, 146 Cal.Rptr. 495 (1978); *Capelouto v. Kaiser Foundation Hospitals,* 7 Cal.3d 889, 103 Cal.Rptr. 856, 500 P.2d 880 (1972); *Deboe v. Horne,* 16 Cal.App.3d 221, 94 Cal.Rptr. 77 (1971); *Wynne v. Orcutt Union School District,* 17 Cal.App.3d 1108, 95 Cal.Rptr. 458 (1971); *Archibald v. Braverman,* 275 Cal.App.2d 253, 79 Cal.Rptr. 723 (1969). Nevertheless, *Dillon* is considered to be something of a landmark case and has been followed by the Washington and Hawaii courts in *Hunsley v. Giard, supra,* and *Rodrigues v. State, supra,* respectively. On the other hand, *Dillon* has been rejected by the New York court in *Tobin v. Grossman, supra,* in which recovery was denied to a mother who sustained mental distress occasioned by an automobile accident which seriously injured her two-year-old son. The facts differed from those in *Dillon* in that the plaintiff mother did not witness the accident but was inside a neighbor's house at the time it occurred. She ran outside when she heard the screech of brakes, only to discover her seriously injured son lying on the ground.

In refusing to adopt the *Dillon* doctrine the New York court stated:

> "The problem of unlimited liability is suggested by the unforeseeable consequence of extending recovery for harm to others than those directly involved in the accident. If foreseeability be the sole test, then once liability is extended the logic of the principle would not and could not remain confined. It would extend to older children, fathers, grandparents, relatives, or others *in loco parentis,* and even to sensitive caretakers, or even any other affected bystanders." 301 N.Y.S.2d at 559, 249 N.E.2d at 423.

Accordingly, the New York Court of Appeals decided to retain the zone of danger rule.

Likewise, the Vermont court in *Guilmette v. Alexander, supra,* held that no recovery would be allowed to plaintiffs located out of the zone of danger. The facts presented were similar to those in *Dillon* in that the plaintiff was suing for physical injuries caused by the mental distress suffered by her as a result of witnessing her young daughter being struck by an automobile as she left a school bus in front of her house. The plaintiff had come to the front porch to greet her daughter.

The Vermont Supreme Court viewed the question as one of legal duty owing to the plaintiff and concluded that no legal duty existed for the protection of one outside the zone of danger. One located in the zone of danger suffers a breach of duty to him in the sense that his own personal safety is threatened; but one located out of the zone of danger has no threat to his safety and, without a violation of some other legally protected right, should not be allowed to recover for physical injuries caused by the negligently inflicted mental distress.

In *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970) the Supreme Court of Pennsylvania rejected the *Dillon* doctrine and, although it overruled its previously followed rule requiring physical impact before recovery for psychic or emotional injury could be allowed, it adopted the zone of

danger rule. *See also Arcia v. Altagracia Corporation,* 264 So.2d 865 (Fla.App.1972).

Moreover, prior to *Dillon* all of the state jurisdictions in this country were unanimous in denying liability to a plaintiff who was not in the zone of danger of impact.

█ It is not necessary that we undertake in this opinion an exhaustive review of the authorities in this field in order to decide the case at bar. Even those jurisdictions which have adopted the most liberal policy, *viz.,* California, Hawaii and Washington, would not permit a recovery to the plaintiff in this case who did not visually or audibly witness the accident in which his child was injured but merely learned of its occurrence through reports by third parties a considerable time after it had occurred. *See, e. g., Parsons v. Superior Court for Monterey County, supra; Deboe v. Horne, supra.* It may be that this Court should modify the rule stated in the *Nuckles* case, *supra,* so as to permit a recovery by a close relative who visually or audibly witnesses an accident in which one "near and dear to him" is threatened with or receives serious personal injuries if such close relative sustains physical pain, suffering and injury due to the shock of witnessing such an occurrence. But, that determination must await a case in which such a claim is presented.

We are satisfied, however, that the rule of liability should not be expanded, if indeed expansion is to occur, far enough to allow recovery upon the facts of the instant case. Our reason for reaching this conclusion is not the lack of authority but (1) the lack of foreseeability by the defendant that his conduct in operating his automobile posed any risk of harm to one situated as was the plaintiff in this case, who was not located within the zone of danger of physical impact and did not visually or audibly witness the infliction of injuries to one

"near and dear to him," and (2) our conclusion that it would be unjust to impose upon a defendant, who is guilty only of negligence rather than intentional wrongdoing,[2] liability for psychic injury to a plaintiff who was not within the zone of danger of physical impact and who did not actually witness the infliction of injuries to one who was "near and dear to him." We, therefore, adhere to the holding, although not to the reasoning, of *Burroughs v. Jordan, supra,* and conclude that plaintiffs have failed to state a cause of action.

Accordingly, the judgment of the trial court is affirmed and costs incurred upon this appeal are assessed against the plaintiffs.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.

---

2. *See Moorhead v. J. C. Penney Co., Inc.,* Tenn., 555 S.W.2d 713 (1977); *Johnson v. Woman's Hospital,* Tenn.App., 527 S.W.2d 133 (1975).