**Bobby L. CAMPER, III, Plaintiff–Appellant,**

v.

**Daniel B. MINOR, Administrator ad litem of the Estate of Jennifer L. Taylor, and Sharon R. Barnett, Defendants–Appellees.**

Supreme Court of Tennessee, at Knoxville.

Jan. 29, 1996.

John P. Chiles, Eilers & Chiles, Kingsport, Thomas F. Bloom, Nashville, for Plaintiff–Appellant.

Jack M. Vaughn, Fuller & Vaughn, Kingsport, for Defendants–Appellees.

## OPINION

DROWOTA, Justice.

In this negligent infliction of emotional distress case, the plaintiff Bobby L. Camper, II, appeals from the Court of Appeals' judgment granting the defendants a summary judgment. This case presents two issues for our determination: (1) whether a non-negligent driver who suffered no substantial phys-

ical injury may recover for emotional injuries under the facts presented in this case; and (2) whether the "family purpose doctrine" survives the adoption of comparative negligence and the abolition of joint and several liability.

## FACTS AND PROCEDURAL HISTORY

On April 14, 1992, the plaintiff Camper was driving his cement truck along South Wilcox Drive, a four-lane highway in Kingsport, Tennessee. At the same time, Jennifer L. Taylor, a 16 year old driver of a car owned by Sharon Barnett, was proceeding on Reservoir Road, a two-lane road that intersects with South Wilcox Drive. As Camper approached the South Wilcox–Reservoir Road intersection, which is controlled by a stop sign, Ms. Taylor, who had been stopped at this intersection, suddenly pulled out in front of Camper. The vehicles collided, and Ms. Taylor was killed instantly. Camper exited his truck moments after the crash, walked around the front of his vehicle, and viewed Ms. Taylor's body in the wreckage from close range.

Mr. Camper subsequently brought an action against Daniel B. Minor, the administrator of Ms. Taylor's estate, and Sharon Barnett, seeking to recover for the emotional injuries he allegedly received as a result of viewing Ms. Taylor's body soon after the accident. In his complaint, Camper did not allege that he sustained any substantial physical injury in the accident; instead, he alleged that "as a result of this accident, the plaintiff suffers from personal injuries to his nerves and nervous system known as a post traumatic disorder [sic], which injury is serious and disabling to him." In his deposition, Mr. Camper testified as to the nature of his injuries as follows:

Q: Okay. At the time of the accident, when the accident occurred, were you injured as a result of this accident?

A: Not physically, but emotionally and mentally I was.

Q: All right. Now—so when you say you weren't injured physically, no broken bones, no cuts, no bruises, no back problems, no nothing [sic]?

A: No, sir. I had a small scrape on my knee.

Q: Okay. But nothing to warrant doctors' care.

A: No, sir.

In his affidavit, Mr. Camper stated "[t]hat as a result of the collision in which I was involved, I have sustained mental and emotional injuries resulting in loss of sleep, inability to function on a normal basis, outbursts of crying and depression. It has been necessary for me to be under the care and treatment of a psychiatrist and counselors and further that I am taking medication in order to help relieve me of my suffering." Camper testified in his deposition that he never feared for his own safety during the accident, and that his emotional injuries resulted solely from seeing Ms. Taylor's body in the car immediately after the accident.

About two weeks after the accident, Mr. Camper consulted a psychiatrist about his mental problems stemming from the accident. He went to the psychiatrist's office twice; but he stated that he quit going because he could not afford it and because the medication the psychiatrist prescribed left him unable to function. Camper later consulted a second psychiatrist. (This visit was three days before Camper's deposition; he stated in his deposition that his lawyer had arranged for the consultation.) This second psychiatrist referred Camper to an apparently more affordable center for counseling; at the time of the deposition, however, Camper had not yet had an appointment at this counseling center. Despite the fact that the record reflects that Camper has undergone some psychiatric treatment, it contains no expert medical evidence detailing his alleged mental and emotional injuries.

After the complaint was filed, the defendants filed a motion for summary judgment, arguing that damages for emotional injuries were not recoverable because Camper did not suffer any physical injury and because he did not, at the time of the accident, fear for his own safety. The defendants relied upon *Shelton v. Russell Pipe and Foundry Co.,* 570 S.W.2d 861 (Tenn.1978) to support this argument.

The trial court denied the defendants' motion, finding that *Shelton*—a "zone of danger" case in which a father sued for emotional injuries after learning of his daughter's injury in an automobile accident in which the father was not involved—did not apply because "the plaintiff was personally involved in the automobile accident and suffered minor injuries." The defendants then sought permission for an interlocutory appeal pursuant to Rule 9, Tenn.R.App.P. The trial court granted the motion, stating that "there [do] not appear to be any reported decisions on this topic since *Shelton* was decided in 1978[; and it] would be proper to have the question determined as to whether a cause of action actually exists under the facts of this case before convening a trial."

The Court of Appeals reversed the judgment of the trial court. The intermediate court reasoned that because Camper's alleged emotional injuries occurred after the accident, when he saw Ms. Taylor's body in the wreckage, the plaintiff failed to provide evidence that he was in fear for his own safety—one of the *Shelton* elements for recovering for mental injuries. The Court also stated that the plaintiff failed to satisfy another requirement enunciated in *Shelton*—that the plaintiff have a "close relationship" with the deceased. In the instant case, the court said, there was no proof that Camper and Ms. Taylor had such a relationship. Because it determined that the plaintiff failed to satisfy the *Shelton* requirements for a prima facie case of negligent infliction of emotional distress, the Court granted the defendants' motion for summary judgment.

Camper then filed an application for permission to appeal pursuant to Rule 11, Tenn.R.App.P. We granted the application to address these important issues of Tennessee tort law.

### I.

The first issue for our consideration concerns the viability of Camper's claim against both defendants for his emotional damages. Because the law of negligent infliction of emotional distress is one of the most disparate and confusing areas of tort law, we believe that it would be useful to briefly survey the approaches used by other jurisdictions before turning to a discussion of the germane Tennessee cases.

### Negligent Infliction of Emotional Distress Law in General

Any survey of the law in this area must begin with a clear and frank recognition that the law of negligent infliction of emotional distress, however it is formulated in a specific jurisdiction, is fundamentally concerned with striking a balance between two opposing objectives: first, promoting the underlying purpose of negligence law—that of compensating persons who have sustained emotional injuries attributable to the wrongful conduct of others; and second, avoiding the trivial or fraudulent claims that have been thought to be inevitable due to the subjective nature of these injuries. The tension produced by this ongoing attempt to winnow out invalid claims at the summary judgment level has caused inconsistency and incoherence in the law; indeed, as the Washington Supreme Court aptly stated some years ago, "any attempt at a consistent exegesis of the authorities is likely to break down in embarrassed perplexity." *Hunsley v. Giard*, 87 Wash.2d 424, 553 P.2d 1096, 1098 (1976).

The first attempt by the courts to mediate between these competing concerns took the form of the classic "physical impact" rule. Under this rule, which was formulated in Britain in the mid to late nineteenth century, *see Lynch v. Knight*, 9 H.L.C. 577 (1861); *Victorian Ry. Comm's v. Coultas*, 13 A.C. 222 (P.C.1888), a plaintiff may not recover for emotional injuries unless he or she suffered an actual physical impact or contemporaneous physical injury caused by the defendant's negligence. In other words, if the defendant's negligence causes both a physical impact or injury *and* emotional distress then the plaintiff may recover damages not only for the physical injury but also for the emotional distress. Although the physical impact rule was overturned in Britain only thirteen years after *Victorian Ry. Comm's* was decided, *see Dulieu v. White & Sons*, 2 K.B. 669 (D.C.1901), it had already been adopted in the United States in New York and in Massachusetts. *Mitchell v. Rochester Ry. Co.,*

151 N.Y. 107, 45 N.E. 354 (1896); *Spade v. Lynn & B.R. Co.*, 168 Mass. 285, 47 N.E. 88 (1897). The physical impact rule was also adopted in a number of other jurisdictions in the late nineteenth and early twentieth centuries. *See* Archibald H. Throckmorton, *Damages for Fright,* 34 Harv.L.Rev. 260, 264, 265 (1921).

Three principal reasons were usually advanced by courts in support of the classic physical impact rule:

> The first deals with medical science's difficulty in proving causation between the claimed damages and the alleged fright. The second involves the fear of fraudulent or exaggerated claims. Finally, there is the concern that such a rule [allowing recovery without a physical injury] will precipitate a veritable flood of litigation.

*Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84, 85 (1970) (abandoning the requirement of a physical impact as a precondition to recovery for damages for emotional distress).

However, as several courts and commentators have pointed out,[1] the reasoning advanced in support of the physical impact rule is seriously flawed. First, the fact that a case may be difficult to prove does not in itself justify a prohibition on the cause of action; instead, this difficulty may be addressed in rules concerning the development of the evidence. Second, because imaginary and fraudulent claims may be just as likely in cases in which an actual physical injury occurred, there is no reason to bar this cause of action simply out a fear of such lawsuits; the trial courts, through the rules of evidence and the adversarial system, can guard against these types of cases. Finally, there are at least two reasons that the fear of a flood of litigation should not be used to completely bar a claim for negligent infliction of emotional distress: (1) courts are charged with the duty of providing a remedy to those who are injured; (2) states which have rules other than the physical impact rule have apparently not suffered any such flood of litigation.

Despite this widespread criticism of the physical impact rule, and the fact that it was been abandoned by many courts, *see Bass v. Nooney Co.,* 646 S.W.2d 765, 769 (Mo.1983) (abandoning the classic impact rule); *Battalla v. State,* 10 N.Y.2d 237, 219 N.Y.S.2d 34, 35–37, 176 N.E.2d 729, 730 (1961) (overruling *Mitchell v. Rochester Ry. Co.* and abandoning the physical impact rule), several jurisdictions still apply the rule. *See R.J. v. Humana of Florida, Inc.,* 652 So.2d 360 (Fla. 1995); *Hammond v. Central Lane Communications Ctr.,* 312 Or. 17, 816 P.2d 593 (1991); *OB–GYN Assc's of Albany v. Littleton,* 259 Ga. 663, 386 S.E.2d 146 (1989); *Garrison v. Medical Ctr. of Delaware,* 581 A.2d 288 (Del.1988); *Deutsch v. Shein,* 597 S.W.2d 141 (Ky.1980). However, in some of these states the rigidity of the impact rule has been lessened due to the way in which it has been applied. For instance, even though a physical impact is required before a plaintiff may recover damages for emotional distress, the courts have carved out explicit exceptions to this requirement. *See, e.g., R.J. v. Humana of Florida, Inc.,* 652 So.2d at 363 (reaffirming the physical impact rule but noting exceptions in cases of intentional infliction of emotional distress, bystander cases involving the witnessing of the death or serious injury of a close family member, and in actions for wrongful death); *Millington v. Kuba,* 532 N.W.2d 787 (Iowa 1995) (declining to make new exception to the physical injury rule but noting that exceptions are allowed in bystander cases and in cases concerning medical professionals providing medical services to patients); *Hammond v. Central Lane Communications Ctr.,* 816 P.2d at 596–598 (declining invitation to abandon physical impact rule but noting that Oregon law allows for recovery for psychic injury alone in three situations); *Naccash v. Burger,* 223 Va. 406, 290 S.E.2d 825 (1982) (general rule requires tortiously caused physical injury but the court has allowed two exceptions and allowed a third exception based upon the particular facts of this case). The fact that courts have repeatedly found it necessary to craft formal exceptions to the rule suggests that the phys-

---

**1.** *See e.g.* Brody *Negligently Inflicted Psychic Injuries: A Return to Reason* 7 Vill.L.Rev. 232 (1961–62); Calvert Magruder, *Mental and Emotional Disturbance in the Law of Torts,* 49 Harv. L.Rev. 1033 (1936); Archibald H. Throckmorton, *Damages for Fright,* 34 Harv.L.Rev. 260 (1921).

ical impact rule provides an arbitrary and inadequate means of reconciling the competing concerns of the law.

Another way in which the potential harshness of the physical impact rule has been ameliorated is that courts have permitted recovery for emotional injuries in cases in which the actual physical injury or impact sustained by the plaintiff was *de minimis*. *See e.g., Deutsch v. Shein*, 597 S.W.2d at 146 (noting that the "amount of physical contact or injury that must be shown is minimal . . . [and that] contact however slight, trifling or trivial will support a cause of action," the court found that being "bombarded by x-rays" was "physical contact.").

An approach that is closely related to, but distinct from, the classic physical impact rule may be characterized as the "physical manifestation" rule. Like the impact rule, the physical manifestation rule requires that the plaintiff sustain a "physical injury," but the requisite injury may either be shown by proof of a contemporaneous physical injury *or* by proof of physical symptoms or manifestations of the emotional injury. This approach is utilized in several jurisdictions. *See Sullivan v. Boston Gas Co.*, 414 Mass. 129, 605 N.E.2d 805 (1993); *Thorpe v. State Dept. of Corrections*, 133 N.H. 299, 575 A.2d 351 (1990); *Brown v. Matthews Mortuary, Inc.*, 118 Idaho 830, 801 P.2d 37 (1990); *Moresi v. State*, 567 So.2d 1081 (La.1990); *Muchow v. Lindblad*, 435 N.W.2d 918 (N.D. 1989); *Reilly v. United States*, 547 A.2d 894 (R.I.1988); *Wright v. Coca–Cola Bottling Co.*, 414 N.W.2d 608 (S.D.1987); *Ellington v. Coca Cola Bottling of Tulsa*, 717 P.2d 109 (Okla.1986); *Sears Roebuck & Co. v. Young*, 384 So.2d 69 (Miss.1980); *Vance v. Vance*, 286 Md. 490, 408 A.2d 728 (1979); *Towns v. Anderson*, 195 Colo. 517, 579 P.2d 1163 (1978); *Johnson v. State*, 37 N.Y.2d 378, 372 N.Y.S.2d 638, 334 N.E.2d 590 (1975); *Daley v. LaCroix*, 384 Mich. 4, 179 N.W.2d 390 (1970); *Doe v. Greenville Hosp. System*, 448 S.E.2d 564 (S.C.Ct.App.1994). This broader approach is based upon the recognition that the physical impact rule unfairly and arbitrarily excludes plaintiffs with meritorious claims of serious emotional injury. It is thus an attempt to strike a balance between the

realization that serious emotional distress can result even in the absence of a physical injury with the longstanding concerns over trivial or fraudulent claims. However, like the physical impact rule, courts have found it necessary to both make exceptions to the physical manifestation rule and to find "physical injury" in cases in which the physical component of the injury was *de minimis*. For this reason, the physical manifestation rule, like the physical impact rule, is open to criticism as an arbitrary and underinclusive approach.

Other jurisdictions do not require the plaintiff to present evidence of a physical injury at all; rather, these jurisdictions use a variety of approaches to separate the meritorious claims from the nonmeritorious ones. One such approach is the "zone of danger" doctrine. Under this doctrine, a plaintiff may recover for emotional distress if, as a result of the defendant's negligence, the plaintiff either suffered a physical injury or was placed in immediate danger of physical harm and contemporaneously feared for his or her own safety. *See, e.g., Consolidated Rail Corp. v. Gottshall*, —— U.S. ——, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) (adopting the zone of danger test for actions under the Federal Employers Liability Act, 45 U.S.C. §§ 51–60); *K.A.C. v. Benson*, 527 N.W.2d 553 (Minn.1995); *Grube v. Union Pacific RR Co.*, 256 Kan. 519, 886 P.2d 845 (1994) (applying *Gotshall* in a state court action under the FELA); *Jones v. Howard University*, 589 A.2d 419 (D.C.1991); *Johnson v. Rogers*, 763 P.2d 771 (Utah 1988) (recognizing serious concerns about the zone of danger rule, but concluding that it strikes a "fair balance"); *Vaillancourt v. Medical Center Hospital of Vermont*, 139 Vt. 138, 425 A.2d 92 (1980); *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970).

The zone of danger test is somewhat broader than either of the physical injury approaches discussed above. However, this test, which arose primarily from "near-miss" automobile accident cases, is based upon a questionable premise: that emotional injuries result *only* from fear of physical harm. While, as a practical matter, many negligent infliction of emotional distress cases may well

involve either physical injuries or fear of physical harm, there are certainly cases in which neither is implicated. Examples of such cases are the failure to timely deliver telegrams concerning the imminent death or serious illness of a loved one, mishandling the corpse of a loved one, or the unauthorized dissemination of private information. In such cases, applying the zone of danger doctrine is illogical, and courts utilizing the doctrine have been compelled to create exceptions to fit these factual situations.

Another approach that does not necessarily require any evidence of a physical injury is the "foreseeability" approach. Under this approach, the key inquiry is whether it was reasonably foreseeable that the defendant's specific course of conduct would cause the plaintiff serious emotional distress. The foreseeability approach, which was first utilized by the California Supreme Court in *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), is applied in a few jurisdictions. *See Johnson v. Ruark Obstetrics,* 327 N.C. 283, 395 S.E.2d 85 (1990); *Gammon v. Osteopathic Hosp. of Maine,* 534 A.2d 1282 (Me.1987); *Gates v. Richardson,* 719 P.2d 193 (Wyo.1986); *James v. Lieb,* 221 Neb. 47, 375 N.W.2d 109 (1985); *Bass v. Nooney Co.,* 646 S.W.2d 765 (Mo.1983). Although this approach has the merit of recognizing that emotional injuries may occur without a concomitant physical injury, and is flexible enough to cover factual situations for which the zone of danger test is clearly inapposite, it provides little, if any, concrete guidelines for trial courts and juries to use in deciding how each case should be resolved.

A final approach that does not require any evidence of a physical injury might be characterized as the "general negligence approach." Courts using this approach have rejected the above-mentioned specially crafted rules and have concluded that negligent infliction of emotional distress cases should be analyzed no differently than any other negligence case; and that the proper application of the familiar elements of negligence is the preferable way in which to sort out the genuine from the false, the serious from the trivial. *See Bowen v. Lumbermens Mut. Cas. Co.,* 183 Wis.2d 627, 517 N.W.2d 432

(1994); *Burgess v. Superior Court (Gupta),* 2 Cal.4th 1064, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (1992); *Corgan v. Muehling,* 143 Ill.2d 296, 158 Ill.Dec. 489, 493, 574 N.E.2d 602, 606 (1991); *St. Elizabeth Hosp. v. Garrard,* 730 S.W.2d 649 (Tex.1987); *Schultz v. Barberton Glass Co.,* 4 Ohio St.3d 131, 447 N.E.2d 109 (1983); *Hunsley v. Giard,* 87 Wash.2d 424, 553 P.2d 1096 (1976). *See also Taylor v. Baptist Medical Ctr.,* 400 So.2d 369 (Ala.1981) (although not clearly stated, court appears to use general negligence law approach); *Montinieri v. Southern New England Tel. Co.,* 175 Conn. 337, 398 A.2d 1180 (1978) (although not clearly stated, court appears to use general negligence law approach).

Moreover, because of their concerns over the possibility of trivial or fraudulent lawsuits, some courts following this approach have imposed a requirement that in order to recover, the plaintiff's emotional injury must have been "serious" or "severe." *See Burgess,* 831 P.2d at 1200, n. 6 ("[t]he purpose of this requirement is to guard against the litigation of trivial or fraudulent claims."); *Schultz,* 447 N.E.2d at 113 ("we hold that a cause of action may be stated for the negligent infliction of *serious* emotional disturbance without a contemporaneous physical injury) (emphasis added); *St. Elizabeth Hosp.,* 730 S.W.2d at 653 (stating that "freedom from severe emotional distress is an interest which the law should serve to protect."). Thus, concerns about possible frivolous or fraudulent lawsuits are dealt with by strengthening the "injury" or "loss" element of the basic negligence framework.

### Tennessee Negligent Infliction of Emotional Distress Law

With these approaches and their respective strengths and weaknesses in mind, we now turn to the Tennessee cases in this area. The early Tennessee cases can clearly be placed in the "physical manifestation" category. For example, in *Memphis State Ry. Co. v. Bernstein,* 137 Tenn. 637, 194 S.W. 902 (1917), the plaintiffs were riding in a bus that became involved in an accident with a streetcar. Apparently one of the plaintiffs was not physically injured, but sued to recover for

her fright and its physical consequences. At trial, the judge instructed the jury that the plaintiff could recover for her fright, but failed to instruct the jury that the plaintiff could only do so if she demonstrated physical manifestations of such fright. The jury found for the plaintiff, but this Court reversed and remanded for a new trial, concluding that "the authorities are quite in accord that mere fright cannot be made the basis of a cause of action, and that damages cannot be allowed for fright alone." 194 S.W.2d at 902. The Court acknowledged, however, that the physical injury need not manifest itself simultaneously with the traumatic event. Instead, the Court concluded that "the better reasoned cases hold that there may be a recovery for bodily pain and suffering proximately following fright occasioned by the negligence of a defendant." *Id.*

*Bernstein* has never been overruled and has been followed by Tennessee courts over the years. *See, e.g., Bowers v. Colonial Stages Interstate Transit*, 163 Tenn. 502, 43 S.W.2d 497 (1931); *All v. John Gerber Co.*, 36 Tenn.App. 134, 252 S.W.2d 138, 142 (1952); *Trent v. Barrows*, 55 Tenn.App. 182, 397 S.W.2d 409 (1965); *Medlin v. Allied Investment Co.*, 217 Tenn. 469, 398 S.W.2d 270 (1966). However, as the preceding general overview of the law would lead one to expect, the cases have been far from consistent. At a very early stage in the law's development, this Court carved out an exception to the physical manifestation rule by holding, in *Hill v. Traveler's Ins. Co.*, 154 Tenn. 295, 294 S.W. 1097 (1927), that a plaintiff could recover for mental damages occasioned by the defendants' mutilation of her husband's dead body during an autopsy, notwithstanding that the plaintiff had neither suffered a contemporaneous physical injury nor exhibited physical symptoms of her alleged mental injuries. This Court explained its departure from the *Bernstein* rule by simply stating "that mental suffering and injury to the feelings would be ordinarily the natural and proximate result of knowledge that the remains of a deceased husband had been mutilated, is too plain to admit of argument." *Hill*, 294 S.W. at 1099. *See also Wadsworth v. Western Union Tel. Co.*, 86 Tenn. 695, 8 S.W. 574

(1888) (establishing a similar exception where message carrier failed to deliver telegraphs to plaintiff regarding the imminent death of her brother, thus preventing her from sitting by his bedside when he died).

Another important exception to the physical manifestation rule has been created in what may be termed the "bystander" cases. Although older law prevented a plaintiff from recovering from emotional damages caused by witnessing the injury or death of a third person, *see Nuckles v. Tennessee Elec. Power Co.*, 155 Tenn. 611, 299 S.W. 775 (1927), Tennessee courts have since utilized a zone of danger test to govern when a person may recover for emotional damages resulting from simply witnessing the death or injury of a third person. Specifically, the plaintiff must either have sustained a physical injury or must have feared for his or her own physical well-being. In addition, the bystander-plaintiff must have had a "close relationship" with the injured or deceased person. *Burroughs v. Jordan*, 224 Tenn. 418, 456 S.W.2d 652 (1970); *Shelton v. Russell Pipe and Foundry Co.*, 570 S.W.2d 861 (Tenn.1978).

This inconsistency in the law has not been confined to creating outright exceptions to the *Bernstein* rule. Rather, in some instances Tennessee courts have, without explicitly rejecting the rule, applied it in such a way as to soften its potential harshness. For example, in *Johnson Freight Lines, Inc. v. Tallent*, 53 Tenn.App. 464, 384 S.W.2d 46 (1964), Margaret Tallent, the plaintiff, had experienced severe mental and emotional problems in late 1958 and early 1959, but had regained her health through extensive hospitalization and electric shock treatments. In July 1961, the plaintiff was involved in a car accident with the defendant in which she was "thrown into the dashboard," but received no physical injuries. Soon thereafter the plaintiff allegedly suffered a relapse into her "previous emotional upset"; and she brought an action against the defendant for negligent infliction of emotional distress. Despite only a modicum of evidence that the plaintiff's injuries had manifested themselves physically, the Court of Appeals affirmed the trial court's denial of the defendant's motion for summary

judgment, citing the fact that the plaintiff's prior mental condition and recovery were undisputed, and that her allegations concerning her post-accident mental condition were supported by lay testimony and the testimony of a psychiatrist and medical doctor. Therefore, the Court's analysis focussed on the quality of evidence presented in support of the plaintiff's claim rather than the physical manifestations of the emotional injuries.

An even clearer departure from a strict interpretation of the "physical manifestation" rule occurred several years later in *Laxton v. Orkin Exterminating Co.*, 639 S.W.2d 431 (Tenn.1982). In *Laxton*, the defendant negligently contaminated the plaintiff's water supply with a dangerous chemical while spraying for insects. Although evidence presented at trial indicated that the plaintiffs drank the contaminated water and that the chemical in the water could be harmful, a medical examination revealed that no physical damage had been done. Moreover, this Court conceded that "the mental anxiety of the Laxtons did not evidence itself in any physical way." *Laxton*, 639 S.W.2d at 433. Notwithstanding the plaintiffs' clear failure to meet the requirements of the physical manifestation rule, we allowed a recovery. After citing several cases in which the plaintiff had recovered after ingesting disgusting matter despite suffering no contemporaneous physical injury and presenting no evidence of physical manifestations of the alleged emotional injuries, *Ford v. Roddy Mfg. Co.*, 60 Tenn.App. 495, 448 S.W.2d 433 (1969) (insects in soft drink); *Roddy Mfg. Co. v. Cox*, 7 Tenn.App. 147 (1927) (dead mouse in soft drink); *Boyd v. Coca–Cola Bottling Works*, 132 Tenn. 23, 177 S.W. 80 (1914) (cigar stub in soft drink), we reasoned that "even though the tests proved negative, in our opinion a jury could find sufficient 'injury' to these plaintiffs to justify a recovery for their natural concern and anxiety for the welfare of themselves and their children." *Id.*, 448 S.W.2d at 434. We concluded by holding that:

> in addition to cases where it has previously been allowed, recovery for the negligent infliction of mental anguish should be allowed in cases where, as a result of defendant's negligence, a plaintiff has ingested an indefinite amount of a harmful substance. In such cases the finder of fact may conclude that the plaintiff has sustained sufficient physical injury to support an award for mental anguish even if subsequent medical diagnosis fails to reveal any other physical injury.

*Id.*

As is the case with the general overview presented above, Tennessee courts have continually found it necessary to deviate from the "physical manifestation" rule by either formally creating exceptions to the rule or by applying the rule in a nonrigorous fashion. This practice of creating *ad hoc* exceptions has made our law of negligent infliction of emotional distress confusing and unpredictable; indeed, the practice appears to have, as the plaintiff here argues, "robbed the law of logic, consistency and fairness."

Although there is some truth to this charge, the Tennessee cases in this area do contain a common thread: the courts' desire to separate, at the prima facie stage and in a meaningful and rational manner, the meritorious cases from the nonmeritorious ones. Indeed, in *Carroll v. Sisters of St. Francis Health Services, Inc.*, 868 S.W.2d 585 (Tenn. 1993), a case in which the plaintiff sued a hospital to recover for her fear of contracting AIDS after pricking her fingers on discarded needles, we acknowledged this:

> Under the older law, a plaintiff was required to show that he or she had sustained a physical injury before being allowed to recover for emotional and mental damages. The physical injury requirement served to objectify the inquiry; it assured that the plaintiff's allegations of emotional injury were grounded in an independently verifiable event. Although the degree of physical injury required to substantiate the plaintiff's emotional damages claim was not always consistent, and was sometimes quite negligible, the requirement nevertheless remained central to this area of negligence law.
>
> It is certainly true that the physical injury requirement has been gradually weakened so that a minimal physical injury will now suffice. This shift in the law, however, does not signal an abandonment of the

objectivizing function served by the physical injury requirement, but is rather a product of the realization that the physical injury requirement no longer properly serves that function in many modern actions for emotional damages.

*Carroll*, 868 S.W.2d at 593.

■ Although our seemingly disparate cases in this area are thus reconcilable on a functional level, we nevertheless agree with the plaintiff here and with many other jurisdictions that the time has come to abandon the rigid and overly formulaic "physical manifestation" or "injury" rule. This rule has proved to be inflexible and inadequate in practice; and, as noted in the preceding section, it completely ignores the fact that some valid emotional injuries simply may not be accompanied by a contemporaneous physical injury or have physical consequences. Therefore, in accordance with our statement in *Carroll* that "[we have] realized that in some situations, whether the plaintiff has incurred a literal physical injury has little to do with whether the emotional damages complained of are reasonable," *id.* at 594, we conclude that the rule shall no longer be used to test the validity of a prima facie case of negligent infliction of emotional distress.

■ This negative conclusion logically raises its positive counterpart: what is required to make out a prima facie case? After considering the strengths and weaknesses of the options used in other jurisdictions, we conclude that these cases should be analyzed under the general negligence approach discussed above. In other words, the plaintiff must present material evidence as to each of the five elements of general negligence— duty, breach of duty, injury or loss, causation in fact, and proximate, or legal, cause, *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn.1993)—in order to avoid summary judgment. Furthermore, we agree that in order to guard against trivial or fraudulent actions, the law ought to provide a recovery only for "serious" or "severe" emotional injury. *Burgess v. Superior Court (Gupta)*, 2 Cal.4th 1064, 9 Cal.Rptr.2d 615, 618, 831 P.2d 1197, 1200 (1992); *St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649, 653 (Tex.1987). A "serious" or "severe" emotional injury occurs "where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Rodrigues v. State*, 52 Haw. 156, 283, 472 P.2d 509, 520 (1970); *Paugh v. Hanks*, 6 Ohio St.3d 72, 77–78, 451 N.E.2d 759, 765 (1983); *Plaisance v. Texaco, Inc.*, 937 F.2d 1004, 1010 (5th Cir. 1991); *Prosser and Keeton on the Law of Torts*, § 54, at 364–65, n. 60. Finally, we conclude that the claimed injury or impairment must be supported by expert medical or scientific proof. *See Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758, 766–67 (1974) ("the plaintiff should be permitted to prove medically the damages occasioned by his mental responses to defendant's negligent act").

■ Having so concluded, we have no alternative but to remand this case for further proceedings consistent with the approach that we adopt today.[2] A remand is necessary because in the trial court the defendants simply argued that they were entitled to a summary judgment because (1) the plaintiff had received no physical injury—a requirement under the prior law; and (2) that the plaintiff had not been in fear for his own safety, as required by *Shelton*. Because the general negligence approach was not controlling at the time the defendants submitted their summary judgment motion, they clearly have failed to prove that no genuine issue of material fact exists as to those elements of negligent infliction of emotional distress that we adopt herein, and that they are entitled to a judgment as matter of law. *See Byrd v. Hall*, 847 S.W.2d 208, 214–16 (Tenn.1993). Because the defendants failed to carry their initial burden pursuant to Rule 56, Tenn. R.Civ.P., we cannot approve of the summary judgment granted by the Court of Appeals.

2. We do not, by our adoption of the general negligence approach, necessarily abandon the "zone of danger" approach used in *Shelton*. Indeed, since the "zone of danger" approach is, in reality, merely a way of defining and limiting the elements of duty and proximate or legal cause, the principles of the approach can likely be integrated into the general negligence framework. The specifics of such an integration must, however, await an appropriate case.

## II.

The second issue for our determination pertains to the potential liability of defendant Sharon Barnett, the owner of the vehicle Ms. Taylor was driving at the time of the accident. This issue is whether the family purpose doctrine remains valid in light of our adoption of comparative fault and the limitations imposed upon the doctrine of joint and several liability.[3] In order to resolve this issue, we must first examine the requirements of the family purpose doctrine and its policy justifications.[4]

■ The family purpose doctrine has been in effect in Tennessee for nearly eighty years, *King v. Smythe,* 140 Tenn. 217, 204 S.W. 296 (1918), and according to at least one court, has been "firmly established in this state." *Stephens v. Jones,* 710 S.W.2d 38, 42 (Tenn.App.1984). Under the doctrine, the head of a household who maintains a motor vehicle for the general use and convenience of the family is liable for the negligence of any member of the family driving the vehicle, provided the driver received express or implied consent.

■ The family purpose doctrine is applicable when two requirements have been satisfied. First, the head of the household must maintain an automobile for the purpose of providing pleasure or comfort for his or her family. *Scates v. Sandefer,* 163 Tenn. 558, 44 S.W.2d 310 (1931). Second, the family purpose driver must have been using the motor vehicle at the time of the injury "in furtherance of that purpose with the permission, either expressed or implied, of the owner." *Redding,* 230 S.W.2d at 205. *See also Stephens v. Jones,* 710 S.W.2d 38 (Tenn.App. 1984); *Long v. Tomlin,* 22 Tenn.App. 607, 125 S.W.2d 171 (1938).

Tennessee courts have offered a number of justifications for the family purpose doctrine. First, the doctrine is based in part on the presumption that the child is subject to parental control. *Adkins v. Nanney,* 169 Tenn. 67, 82 S.W.2d 867 (1935). By imposing vicarious liability, the courts hoped to provide parents with an incentive to ensure that the actions of their children conform to the requirements of law. As stated by the *King* court, "[i]f owners of automobiles are made to understand that they will be held liable for injury to person and property occasioned by their negligent operation by infants or others who are financially irresponsible, they will doubtless exercise a greater degree of care in selecting those who are permitted to go upon the public streets with such dangerous instrumentalities." *King,* 204 S.W. at 298. Second, the courts justified the doctrine on a somewhat modified form of the "enterprise theory." As one court explained in an unpublished opinion in 1993, "one who furnishes and maintains the vehicle for the convenience of his family members is regarded as making such use his own business so that *the family member driver is furthering the owner's own purpose.*" (emphasis added). The courts reasoned that because the head of the household was benefiting from such activity, he or she ought to be liable for the accidents that will inevitably result. Finally, the doctrine was thought important in providing innocent victims "substantial justice." As this Court explained in *King,*

> [A]s a matter of practical justice to those who are injured, we cannot close our eyes to the fact an automobile ... is dangerous to life and limb and must be operated with care. If an instrumentality of this kind is placed in the hands of his family by a father, for the family's pleasure, comfort, and entertainment, the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can justice be attained. A judgment for damages against an infant ... would be an empty form.

*King,* 204 S.W. at 298.

The defendants argue that the family purpose doctrine is merely a variant of joint and several liability, and that because this Court has stated that joint and several liability no

---

3. I disagree with the other members of the court as to the precise scope of these limitations. *See Owens v. Truckstops of America,* 915 S.W.2d 420 (Tenn.1996) (Drowota, J. dissenting).

4. Although the relationship between Ms. Barnett and Ms. Taylor is not made clear in the record, Ms. Barnett admitted in the answer that the car was being used for a family purpose.

longer exists as an independent legal doctrine, *see Bervoets v. Harde Ralls Pontiac, Inc.*, 891 S.W.2d 905, 907 (Tenn.1994), the family purpose doctrine is no longer valid. Therefore, they conclude, Ms. Barnett cannot be held liable for the actions of Ms. Taylor.

We cannot accept this argument. Our statements in *Bervoets* and *Volz v. Ledes*, 895 S.W.2d 677, 680 (Tenn.1995),[5] regarding the doctrine of joint and several liability were made in situations where multiple tortfeasors committed separate, independent acts that combined to cause a single, indivisible injury to the plaintiff. Therefore, our earlier rulings concerning joint and several liability concerned apportioning liability among persons whose active negligence contributed to the plaintiff's injury. *Owens v. Truckstops of America*, 915 S.W.2d 420 (Tenn.1996) (Drowota, J. dissenting).

In stark contrast, the family purpose doctrine does not involve such a situation. Rather, that doctrine attaches liability to the head of the household not because of any negligent act committed by that person, but because of the agency relationship that is deemed to exist between the head of the household and the driver of the family car. In other words, the actions of the driver are imputed to the head of the household as a matter of public policy; and the plaintiff does not have to prove negligence on the part of the head of the household in order to recover from him or her when the plaintiff is injured by the tortious conduct of the driver. *See generally Prosser and Keeton on the Law of Torts*, § 73, at 524–27 (5th ed. 1984).

Once the nature of the family purpose doctrine and the proper scope of our prior statements regarding joint and several liability are understood, it becomes clear that those statements do not affect the viability of the family purpose doctrine. This same conclusion was reached by the New Mexico Court of Appeals in an analogous context:

> [T]he abolition of joint and several liability when tortfeasors are negligent does not necessarily undermine principles of vicarious liability. There are still situations in which a party who is without fault is responsible for paying compensatory damages caused by the fault of another. To take the example closest in point, the rule of respondeat superior provides that a faultless employer is nevertheless liable for torts committed by an employee in the course and scope of employment. *Because liability is not predicated on the fault of the employer, the abolition of joint and several liability does not eliminate respondeat superior liability.*

*Medina v. Graham's Cowboys, Inc.*, 113 N.M. 471, 827 P.2d 859, 863 (App.1992) (emphasis added and citations omitted).

Because our conclusion as to the second issue does not affect our holding as to the first, the judgment of the Court of Appeals is hereby reversed and the case remanded for further proceedings consistent with this opinion.

ANDERSON, C.J., and REID, BIRCH and WHITE, JJ., concur.

---

5. *Bervoets* and *Volz* are the only post-*McIntyre* cases in which an argument concerning the abolition of joint and several liability was made and the issue squarely presented.