IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 16, 2002 Session

## GINNIE LEACH, ET AL. v. TIM TAYLOR, ET AL.

**A Direct Appeal from the Circuit Court for Gibson County**
**No. 7852     The Honorable Clayburn Peeples, Judge**

_____

**No. W2002-01091-COA-R3-CV - Filed December 30, 2002**

_____

Plaintiffs sued Defendants for intentional and negligent infliction of emotional distress, stemming from comments Defendants made concerning the condition of Plaintiffs' father's corpse. The Circuit Court, Gibson County, granted the Defendants' Tenn. R. Civ. P. 12 Motion to Dismiss. Plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. joined and HOLLY KIRBY LILLARD, J., dissented.

Joseph R. Taggart, Jackson, For Appellant, Ginnie Leach and J. T. Hill, Jr.

Michael E. Evans, Nashville, For Appellees, Tim Taylor and Larry Taylor

**OPINION**

This is an intentional and/or negligent infliction of emotional distress case. In July 1997, J.T. Hill, Sr. (The "Decedent") died after suffering a stroke. His children, Ginny Leach and J.T. Hill, Jr. ("Plaintiffs") signed a Consent for Organ Donation, which allowed for the harvesting of the Decedent's spleen, kidney, liver, and lymph nodes. Plaintiffs also contacted Tim and Larry Taylor at Hunt Funeral Home (together with Tim and Larry Taylor, the "Defendants") to arrange for the embalming and burial of the Decedent. Hunt Funeral Home picked up the Decedent's body and Defendants Tim and Larry Taylor performed the embalming. At some point during the process of preparing the body, Tim and Larry Taylor allegedly made the following comments to the Plaintiffs:

> 1. That their [the Plaintiff's] father was in "terrible shape" causing them [Tim and Larry Taylor] to have difficulty with the embalming process.

2. That the Decedent's breast bone had been broken and not put back together; and that "everything was gone."

3. That they [Tim and Larry Taylor] did not see the heart or lungs; that the chest cavity was empty, leading Plaintiffs to reasonably believe the hospital and donor services exceeded the scope of the limited donation.

4. That "they [donor services] even took his [the Decedent's] private parts."

5. That all of the arteries and veins had been left open, i.e. "Not tied off" by hospital personnel.

6. That they [Tim and Larry Taylor] were forced to treat [the Decedent] as an autopsy case due to the condition of the body.

7. That the autopsy-style embalming process required them [Tim and Larry Taylor] to use the individual veins in the arms, legs and neck.

8. That they [Tim and Larry Taylor] had to fill [the Decedent's] chest cavity with bags of sawdust to make up for the missing organs; all of which lead Plaintiffs to reasonably believe their father's body had been mutilated by the hospital or donor services personnel.

After hearing these statements, the Plaintiffs initiated civil actions against all medical entities connected with the harvesting of the Decedent's organs.[1] The discovery process eventually required the disinterment, autopsy, and re-interment of the Decedent's corpse.[2] The autopsy, which was performed on October 4, 1999, revealed that the body had been properly processed by the organ transplant team and that all organs, except those authorized for harvesting, were present. Plaintiffs subsequently dropped their civil suits against the medical entities.

---

[1] This case was styled *J.T. Hill, Sr., deceased, by and through his children and next of kin, Ginnie Leach and J.T. Hill, Jr. And Ginnie Leach and J.T. Hill, Jr., individually v. Jackson-Madison County General Hospital District, DCI Donor Services, Inc., Lifenet, and Dr. Amadeo Marcos.*

[2] Plaintiffs contacted Defendants about the costs of disinterment and re-interment. Plaintiffs claim that this conversation put Defendants on notice that Plaintiffs were acting in reliance upon Defendants' representations and allegations.

On June 15, 2000, Plaintiffs filed suit against Defendants for negligent and intentional infliction of emotional distress and outrageous conduct.[3] This suit was subsequently non-suited in the Spring of 2001. On January 9, 2002, Plaintiffs again brought suit against Tim and Larry Taylor and Hunt Funeral Home, alleging negligent and intentional infliction of emotional distress and outrageous conduct stemming from the statements made to the Plaintiffs concerning the condition of their father's body. An amended complaint was filed on January 25, 2002. On February 8, 2002, Defendants filed a Motion to Dismiss pursuant to Rule 12, Tennessee Rules of Civil Procedure along with a memorandum in support of that Motion. The Defendants' alleged that:

> 1. Plaintiffs failed to comply with any relevant statute of limitations and the so-called discovery rule does not apply, such that this lawsuit should be dismissed as untimely filed;
>
> 2. If the discovery rule otherwise might apply to a similar lawsuit, Plaintiffs are not entitled to rely upon it in this particular case; and
>
> 3. The Complaint and Amended Complaint fail more generally to state a claim upon which relief can be granted.

On April 5, 2002, Plaintiffs filed a Response to Defendants' Motion to Dismiss, along with affidavits in support of their Response. The Defendants' Motion to Dismiss was heard on April 8, 2002. An Order granting the Defendants' Motion was filed on April 19, 2002.

Plaintiffs appeal and raise the following issues for our review as stated in their brief:

> I. Whether or not Plaintiffs complied with the applicable statute of limitations and whether or not operation of the discovery rule should toll the relevant statute of limitations.
>
> II. Whether or not the discovery rule should apply in this case.
>
> III. Defendants' Tennessee Rule of Civil Procedure 12.02(6) claim.
>
> IV. Whether or not the trial judge properly granted the Defendants' Motion to Dismiss predicated upon Tennessee Rule of Civil Procedure 12.06(6).

We will address the first two issues together.

## Statute of Limitations and Discovery Rule

---

[3] Circuit Court of Gibson County Docket Number 7712.

Defendants argue that the six-month statute of limitations for slander should apply in this case. We disagree. Though based upon oral statements, Plaintiffs have alleged intentional or negligent infliction of emotional distress not slander. Consequently, a one year statute of limitations applies.

In addressing the issue of whether the discovery rule is applicable, we are careful to note that this case does not stem from the mere uttering of the statements by the Defendants but rather from the discovery that those statements were false. It is the falsity, and not the speaking, that is the gravamen of the Plaintiffs' Complaint. Short of holding that the Plaintiffs should have automatically distrusted Tim and Larry Taylor, or that the Plaintiffs should have known by some instinct or power that these businessmen, whom the Plaintiffs had known for some time and with whom they had previously conducted business, were not forthright, there is nothing in the record before us to indicate that the Plaintiffs knew or should have known that the statements were false until the autopsy results of October 4, 1999. We, therefore, hold that the Plaintiffs' cause of action arose in October 4, 1999 upon the discovery that the Defendants' statements were false. Applying the one year statute of limitations, Plaintiffs had until October 4, 2000 to file their claim for intentional or negligent infliction of emotional distress.

Plaintiffs initial action was filed on June 15, 2000. This action was subsequently non-suited in the Spring of 2001. The complaint from which the present appeal arises was filed on January 9, 2002. Although this action was filed more than one year after October 4, 1999, it was nevertheless rendered timely by Tennessee's savings statute, which allows a timely filed action that has been non-suited to be recommenced within one year of the date on which the non-suit was taken. *See* T.C.A. § 28-1-105(a) (Supp.2000).

We now turn to issues three and four, which we will address concurrently.

**Tenn. R. Civ. P. 12 Motion**

A motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. It admits the truth of all relevant and material allegations but asserts that such allegations do not constitute a cause of action as a matter of law. *See Riggs v. Burson*, 941 S.W.2d 44 (Tenn. 1997). Obviously, when considering a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to the examination of the complaint alone. *See Wolcotts Fin. Serv., Inc. v. McReynolds*, 807 S.W.2d 708 (Tenn. Ct. App. 1990). The basis for the motion is that the allegations in the complaint considered alone and taken as true are insufficient to state a claim as a matter of law. *See Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn. 1975). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See Cook Utihoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934 (Tenn. 1994).

We will first address the question of whether the Plaintiffs' claims for intentional infliction of emotional distress and outrageous conduct can survive the Defendants' Motion to Dismiss. For clarification, we note that intentional infliction of emotional distress and outrageous conduct are simply different names for the same cause of action which has three essential elements: (1) the conduct complained of must be intentional or reckless, (2) it must be so outrageous that it is not tolerated by a civilized society, and (3) it must result in serious mental injury. *See Bain v. Wells*, 936 S.W.2d 618 (Tenn.1997). The actionable conduct under this theory must be set out in the pleadings. *Medlin v. Allied Investment Co.*, 398 S.W.2d 270 (Tenn. 1966). The actionable conduct should be set out in the complaint describing the substance and the severity of the conduct that is allegedly outrageous. *Braswell v. Carothers*, 863 S.W.2d 722 (Tenn. Ct. App.1993). In *Medlin v. Allied Investment Co.*, 398 S.W.2d 270 (Tenn. 1966), our Supreme Court addressed the question of what constitutes outrageous conduct and held as follows:

> These factors are set out in the Restatement of Torts(2d), sec. 46, Outrageous Conduct Causing Severe Emotional Distress.
>
> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm results from it, for such bodily harm.
>
> Clarification of this statement is found in the following comment:
>
> d. Extreme and Outrageous Conduct. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct is characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

*Id.* at 274.

We find that the statements made by the Defendants, when taken alone, do not rise to the level of "conduct that is so outrageous that it is not tolerated by a civilized society." *Bain*, at 622.

-5-

If, indeed, the Decedent's body was mutilated by the harvesting of his organs, the Defendants could have had a duty to inform the Decedent's family. Therefore, the only fact that would make these statements outrageous would be if the Defendants made them, knowing that the statements were false. If, however, the Defendants discovered that their statements were misleading only after the October 4, 1999 autopsy was performed, that is not outrageous conduct.[4] Consequently, in order for their intentional infliction of emotional distress case to survive the Defendants' Motion to Dismiss, the Plaintiffs' Amended Complaint would need to allege that the Defendants knew the statements were false when they made them. However, it is not enough in an action for outrageous conduct to plead only legal conclusion. *Medlin* at 275. In ***Swallows v. Western Elec. Co., Inc.***, 543 S.W.2d 581, (Tenn. 1976), our Supreme Court discusses the rationale behind the *Medlin* requirement:

> [A]s pointed out in *Medlin*, "It is not enough in an action of this kind to allege legal conclusion; the actionable conduct should be set out in the [complaint]." This is so because the court has the burden of determining, in the first instance, whether appellees' conduct may reasonably be regarded as so extreme and outrageous as to permit recovery or whether the conduct is such as to be classed as "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities," for which appellees would not be liable.

*Id* at 583 (citations omitted).

Having discussed *supra* the fact that the statements allegedly made by Tim and Larry Taylor can only be deemed outrageous if Tim and Larry Taylor knew those statements to be false at the time they were uttered, we now turn to the Appellants' pleadings to determine if such knowledge was alleged. In reviewing the pleadings in this matter, and construing them as liberally as we can in favor of the Plaintiffs, we do not find any allegation from which we can infer that the Defendants knew the statements concerning the Decedent's condition were false when they initially made those statements to the Plaintiffs. In pertinent part, Plaintiffs' complaint reads as follows:

> 13. These intentional, willful, wanton, malicious and/or negligent acts by Defendants constituted:
>
> (a) Wrongful interference with the right to burial;
> (b) Prevention of a proper disposition of a body causing the disinterment and reinterment and needless autopsy of Mr. Hill's body; and

---

[4] This could be the basis for a negligent infliction of emotional distress claim, which would also fail for reasons discussed *infra*.

(c) Negligent interference with a corpse.

&ast; &ast; &ast;

15. Defendant['s] acts were intentional, willful, wanton or otherwise outside the bounds of common decency and constitute outrageous conduct.

&ast; &ast; &ast;

24. Defendants continue to make the aforementioned statements regarding the condition of Mr. J.T. Hill, Sr.'s body at the time it was received for embalming. These misrepresentations...

The Plaintiffs refer to the statements made by the Defendants as "misrepresentations" in paragraph 24. While this term connotes falsity, falsity is not the dispositive issue here. After the autopsy on Mr. Hill's body, there is no dispute that the statements were, indeed, misrepresentations. However, there is nothing in the word "misrepresentations" to indicate that the maker knew the words were false when he uttered them. In order to satisfy the requirements of *Medlin*, Plaintiffs would need to substitute the noun-form, "misrepresentations," for the verb-form, "misrepresent." The word "misrepresent" indicates an intent to deceive or be unfair. "Misrepresentations," on the other hand, connotes only falsity. Although the distinction is subtle, *Medlin* requires a pleading of more than falsity to make these statements outrageous.

While we note that it is not entirely clear from the complaint that Defendants' "acts" include the speaking of the statements, we will infer in favor of the Plaintiffs that the uttering of the statements is included in "acts." In paragraph 13, Plaintiffs use the word "malicious" to describe the acts of the Defendants. Since malice indicates that the actor desires to do harm or to inflict suffering, giving Plaintiffs every inference in their favor, we could infer that, in the context of this case, words spoken maliciously were made with knowledge of their falsity. However, Plaintiffs' complaint uses the word "malicious" only in connection with allegations of results including: wrongful interference with the right to burial, prevention of proper disposition of a body, and negligent interference with a dead body. Malicious acts are not alleged to have resulted in outrageous conduct. In paragraph 15, where Plaintiffs do allege outrageous conduct, Defendants "acts" become only "intentional," "willful," and "wanton." To make a statement intentionally or willfully simply implies that the speaker meant to say something. To speak wantonly connotes mischief and is not sufficiently outrageous to meet the requirements of this tort.

While we may construe the complaint liberally in favor of the Plaintiffs, we are nonetheless bound by the language used therein. Even stretching the plain language of this

-7-

complaint beyond the norm, and giving Plaintiffs all inferences allowable, we do not find language to support a claim for outrageous conduct in these pleadings.

Turning to the Plaintiffs' claim for negligent infliction of emotional distress, we find that it too cannot survive the Tenn. R. Civ. P. 12 motion. In order to make out a prima facie case of negligent infliction of emotional distress, the plaintiff must prove the elements of duty, breach of duty, injury or loss, causation in fact, and proximate cause. *See Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996). In *Camper*, the Court further held that recovery for negligent infliction of emotional distress claims, where there is no physical injury, is limited to serious or severe emotional injury supported by expert medical or scientific proof. *Id*. The Plaintiffs' Amended Complaint alleges the following:

> 25. As the direct result of the Defendants' statements, Plaintiffs
> have suffered:
> (a) Fright, shock, anxiety & depression;
> (b) Nightmares;
> (c) Expenses for medical treatment;
> (d) Past, future impairment to the enjoyment of life; and
> (e) Out of pocket expenses for:
> > i. Exhumation/disinterment;
> > ii. Autopsy
> > iii. Re-interment; and
> > iv. Litigation expenses against the hospital, donor
> > services and physician.

From the language "expenses for medical treatment" we hold that the Plaintiffs' Complaint does not allege "serious or severe emotional injury supported by expert medical or scientific proof" sufficient to overcome the Defendants' Motion to Dismiss.

For the foregoing reasons, we affirm the trial court's order granting the Defendants' Motion to Dismiss. Costs of appeal are assessed to the Appellants, Ginnie Leach and J.T. Hill, Jr., and their surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.