# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
November 14, 2005 Session

## DERRICK LAWRENCE, ET AL. v. TREES N TRENDS

**Appeal from the Circuit Court for Bradley County**
**No. V-04-470     John B. Hagler, Jr., Judge**

---

**No. E2005-01365-COA-R3-CV  - FILED DECEMBER 13, 2005**

---

Derrick Lawrence and Kim Lawrence ("Plaintiffs") sued Trees-N-Trends (the "Store") alleging outrageous conduct and/or negligent infliction of emotional distress. While Plaintiffs were shopping at the Store, a customer reported to the Store's manager that Plaintiffs had a gun and intended to commit a robbery. The Store's assistant manager, Whitney Finnell ("Finnell"), called 911 indicting there was a possible armed robbery but then clarifying that the report was based solely on information provided by a customer. Plaintiffs purchased some items and were confronted by police officers as they exited the store, made to lie on the pavement, and were handcuffed while the officers ascertained whether Plaintiffs were armed. Plaintiffs were not armed. The Trial Court granted summary judgment to the Store, and Plaintiffs appeal claiming there are genuine issues of material fact. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Bert Bates, Cleveland, Tennessee, for the Appellants Derrick Lawrence and Kim Lawrence.

Alaric A. Henry and Amanda G. Branam, Chattanooga, Tennessee, for the Appellee Trees-N-Trends.

## OPINION

## Background

On December 16, 2003, Plaintiffs were shopping for Christmas presents at the Store which is located in Cleveland, Tennessee. The Store was managed on that day by Mikel Munger ("Munger"), and the assistant manager was Finnell. According to the complaint, Finnell made a telephone call to the police "reporting an armed robbery in progress and identifying Plaintiffs as the perpetrators." Plaintiffs alleged in the complaint that as they were leaving the store:

> [They] were taken down by the police on a public street, searched and hand cuffed (sic) and made to lie on the pavement for an extended period of time while the police conducted their reasonable investigation of the false, outrageous and erroneous report by officers and agents of the Defendant's store. The police responded to the armed robbery in progress report with several police vehicles causing a public incident and a crowd to gather. The police reasonably held loaded fire arms (sic) pointed at Plaintiffs causing great fear and trepidation.

Plaintiffs sued for intentional and/or negligent infliction of emotional distress which they claim resulted in significant emotional injury and public embarrassment to them from being singled out and accused of armed robbery with "absolutely no basis in fact."[1]

The Store answered the complaint and generally denied any liability to Plaintiffs. The Store later filed a motion for summary judgment claiming the undisputed material facts demonstrated that Munger and Finnell, and consequently the Store, had engaged in no actionable conduct. In support of its motion, the Store filed its Statement of Undisputed Facts and the affidavits of Munger and Finnell. According to Munger, customers were complaining to him that Plaintiffs were exhibiting lewd behavior and appeared to be stalking female customers. Munger then swore that he was approached by a customer who was "in a panicked state. This customer wanted to immediately be removed from the store because she believed that … [Plaintiffs] had a gun and intended to rob the store." Munger then instructed Finnell to go to the office, secure the cash, and stand by the phone. Soon thereafter Munger instructed Finnell to call the police. Finnell's affidavit is consistent with Munger's version of how the events unfolded. Specifically, Finnell stated that Munger "told me that a customer had reported two men were in the store with a gun and planned to rob the store." Munger then instructed Finnell to go to the office in the rear of the store. A few minutes later, Finnell was told to call the police, and Finnell then made the call to 911.

---

[1] When it was determined that neither Plaintiff had a firearm, plaintiff Derrick Lawrence was released. However, plaintiff Kim Lawrence was taken into custody because he had an outstanding theft warrant.

Plaintiffs filed, among other items, their Response to Defendant's Statement of Undisputed Facts, Plaintiffs' Statement of Material Facts, and their affidavits in opposition to the Store's motion for summary judgment. Plaintiffs swore they engaged in no inappropriate behavior at any time while shopping at the Store. Plaintiffs further claimed to have engaged in no conduct which would lead anyone to believe they were armed or that they intended to rob the store.

After the Store's motion for summary judgment and Plaintiffs' response to the motion were filed, the Trial Court reserved its ruling and apparently requested that the tape recording of the 911 call to the police be furnished to the Trial Court. A certified transcript of the call to 911 later was furnished to the Trial Court which detailed the call made by Finnell. When asked the nature of the emergency by the 911 operator, Finnell responded that there was a possible armed robbery. In relevant part, the following conversation then took place:

911: "Did ya'll see a gun?"

Caller: "We didn't see a gun, but we had a report of a customer's saying that [they] saw a gun."

911: "You heard a report what?"

Caller: "A customer reported that they saw a gun."

911: "Okay"

* * *

911: "Are they leaving?"

Caller: "We think though they're still at the checkout."

* * *

911: "[Police] Units on Keith Street be advised, the subjects are heading to the checkout counter at this time. Caller is advising that a customer saw the 1039 article."

Following supplementation of the Store's motion for summary judgment with the transcript of the 911 call, the Trial Court granted the motion for summary judgment. Plaintiffs appeal arguing that when the evidence is viewed in the light most favorable to Plaintiffs, there are genuine issues of material fact and, therefore, the Trial Court improperly granted the Store's motion for summary judgment.

-3-

## Discussion

In *Blair v. West Town Mall*, our Supreme Court recently reiterated the standards applicable when appellate courts are reviewing a motion for summary judgment. *Blair v. West Town Mall*, 130 S.W.3d 761 (Tenn. 2004). In *Blair*, the Court stated:

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *See Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: 1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and 2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Staples*, 15 S.W.3d at 88.

> \* \* \*

> When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.

> To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

*Blair*, 130 S.W.3d at 763-64, 767 (quoting *Staples*, 15 S.W.3d at 88-89).

Our Supreme Court also has provided instruction regarding assessing the evidence when dealing with a motion for summary judgment, stating:

> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000).

There are three essential elements to stating a cause of action for outrageous conduct or intentional infliction of emotional distress. These elements are: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). As discussed by the Court in *Bain*, this is not an easy burden to meet. According to *Bain*:

> [T]his Court has adopted and applied the high threshold standard described in the Restatement (Second) of Torts as follows:
>
> > The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

*Bain*, 936 S.W.2d at 622-23.

-5-

The *Bain* Court also discussed the tort of negligent infliction of emotional distress, stating:

> Recently, in *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996), we revisited the tort of negligent infliction of emotional distress to consider the continuing viability of the "physical manifestation" or "injury" rule. Concluding that the rule had proven to be confusing, rigid, and inadequate in practice, we abandoned the physical injury rule and adopted instead the general negligence approach. *Id.*, 915 S.W.2d. at 446. To avoid summary judgment under the general negligence approach, a plaintiff must present material evidence as to each of the five elements of negligence--duty, breach of duty, injury or loss, causation in fact, and proximate, or legal cause. *Id.* Moreover, recovery is only appropriate for "serious" or "severe" emotional injury which is established by expert medical or scientific proof. *Id.*

*Bain*, 936 S.W.2d at 624.

Returning to the present case, it is important to keep focused on the fact that the reasonableness of the customer's conduct who made the report to Munger, if such customer existed, is not at issue. In other words, whether the customer reasonably believed Plaintiffs were armed and/or intended to commit a robbery is not determinative. The customer is not a defendant in this case.

The best Plaintiffs can do is argue that a jury might decide that Munger was lying when he said such a customer existed and that this customer made that report. While we must view the evidence in the light most favorable to Plaintiffs, and we do, we also must draw only all reasonable inferences, not speculations, in Plaintiffs' favor. Plaintiffs failed to meet their burden to set forth specific facts establishing the existence of a dispute as to whether a customer made the report as claimed by the Store in Munger's affidavit. Plaintiffs' affidavits were insufficient, even applying the appropriate summary judgment standard as discussed above including taking the strongest legitimate view of the evidence in favor of Plaintiffs, to create a genuine issue as to the material fact of whether or not this customer of the Store existed and made this report. Therefore, the only issue left is whether Munger's and Finnell's conduct after receiving the report from the customer was such that their conduct was outrageous or constituted negligent infliction of emotional distress as a matter of law given the undisputed material facts.

The affidavits filed by the Store, along with the transcript of the 911 call, demonstrate that a customer approached Munger expressing a desire to leave the store immediately because Plaintiffs "had a gun and intended to rob the store." After this report was made, Munger instructed Finnell to go to the office and eventually the call to 911 was placed. While Finnell initially reported a "possible armed robbery," Finnell then made it clear in this call that no Store employee ever saw

a gun and the 911 call was being placed based solely on a "customer reported that they saw a gun." The fact that the Store was relying only on information provided by a customer was relayed to the police officers. The affidavits filed by Plaintiffs do not contradict any of these material facts.

We agree with the Trial Court that the undisputed material facts demonstrate as a matter of law that neither Munger nor Finnell engaged in any conduct which can be considered outrageous. Both the material facts and the reasonable inferences to be drawn from those material facts permit a reasonable person to reach only one conclusion with that conclusion being that the Store's conduct was not so outrageous as not to be tolerated by civilized society. Additionally, assuming for present purposes that Munger and Finnell owed a duty to Plaintiffs while making the call to 911, the undisputed material facts and the reasonable inferences to be drawn from those material facts also demonstrate that, as a matter of law, no such duty was breached by reporting the customer's report to 911. As such, the Trial Court properly granted Defendant's motion for summary judgment on both the outrageous conduct claim and the claim for negligent infliction of emotional distress.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are assessed against the Appellants Derrick Lawrence and Kim Lawrence, and their surety.

_____
D. MICHAEL SWINEY, JUDGE