IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 2003 Session

## CINDY R. LOURCEY, ET AL. v. ESTATE OF CHARLES SCARLETT

**Appeal from the Circuit Court for Wilson County**
**No. 12043     Clara Byrd, Judge**

**No. M2002-00995-COA-R3-CV - Filed July 8, 2003**

Charles Scarlett, in the middle of a domestic dispute with his wife, flagged down a postal worker, Cindy Lourcey, and asked for help. Without warning, and in the presence of Mrs. Lourcey, Mr. Scarlett shot his wife in the head and then killed himself. Mrs. Lourcey sued Mr. Scarlett's estate alleging negligent and intentional infliction of emotional distress. Mr. Lourcey also sued for loss of consortium. The estate filed a Motion to Dismiss pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure for failure to state a cause of action. The trial court granted the Motion to Dismiss. We hold that the Lourceys did in fact state a cause of action. Therefore, we reverse the decision of the trial court and remand for further proceedings in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and DON R. ASH, SP. J., joined.

David L. Cooper, Nashville, Tennessee, for the appellants, Cindy R. Lourcey and Vernon B. Lourcey.

W. Bryan Brooks and Michele M. Brubaker, Nashville, Tennessee, for the appellee, Estate of Charles Scarlett.

**OPINION**

**I.**

Cindy Lourcey was a U.S. Postal Carrier. While delivering mail in Lebanon, Tennessee on February 5, 2001, she came upon Charles Scarlett and his wife Joanne. Mrs. Scarlett was lying in the street naked from the waist up. Mr. Scarlett told Mrs. Lourcey that his wife was having a seizure.

Appellant then used her cell phone to call 911. While Mrs. Lourcey was speaking to the 911 operator, Mr. Scarlett pulled out a pistol and shot his wife in the head. He then turned to face Mrs. Lourcey, who was still speaking with the 911 operator, and shot himself in the head as she watched. Mr. Scarlett died as a result of this wound.[1]

Mrs. Lourcey was diagnosed with post-traumatic stress disorder and major depression as a result of this incident. She attempted to return to work, but the mental and emotional stress prevented her from continuing her employment. She stopped working for the postal service around July 31, 2001.

She and her husband filed a claim on January 18, 2002, against Mr. Scarlett's estate (the "Estate") claiming negligent and intentional infliction of emotional distress and loss of consortium on behalf of Mr. Lourcey. The Estate filed a Motion to Dismiss under Rule 12.02(6) of the Tennessee Rules of Civil Procedure. After a hearing on the motion, the trial court held a hearing on April 5, 2002 and granted the Estate's motion by Order filed April 10, 2002.

## II.
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM[2]

When this court reviews a trial court's dismissal of a case pursuant to Rule 12.02(6), there is no presumption of correctness as to the "trial court's legal conclusions regarding the adequacy of the complaint." *Pendelton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001).

The first issue presented in this case is whether Appellants can plead a case of negligent and/or intentional infliction of emotional distress when Mrs. Lourcey was not related to either person shot at the scene. We do not need to decide whether Appellants would be successful on the merits, but rather, whether there is a cause of action based on these particular facts.

This court has frequently faced the question of what it takes to make out a case of infliction of emotional distress. In *Thurmon v. Sellers*, 62 S.W.3d 145 (Tenn. Ct. App. 2001), this court addressed an appellant's argument that the trial court had erred in not dismissing a claim for negligent infliction of emotional distress where the plaintiff was not related to the third party injured in a car accident. We analyzed the requirements for negligent infliction of emotional distress claims as the following:

---

[1] At oral argument, Appellants' counsel informed the court that Mrs. Scarlett did not die as a result of her wounds, but was severely injured.

[2] Since Mr. Scarlett's acts were intentional, it may seem strange to some that the Lourceys could have a cause of action based on negligence. But an act may be negligent if the actor realizes or should realize that his or her act involves an unreasonable risk of subjecting another to an emotional disturbance of such character as to be likely to result in illness or other bodily harm. *See* 38 Am. Jur. 2d, *Fright, Shock, and Mental Disturbance*, § 11.

After a long history of confusing and unpredictable law as it concerned negligent infliction of emotional distress, the Tennessee Supreme Court established the factors required to make out a prima facie case for negligent infliction of emotional distress in its opinion in *Camper v. Minor,* 915 S.W.2d 437 (Tenn.1996). There, the court held that such cases should be analyzed under the general negligence approach whereby the plaintiff must present evidence as to duty, breach of duty, injury or loss, causation in fact, and proximate, or legal, cause. *See id.* at 446. In order to recover for emotional injuries, the plaintiff must prove two things: (1) that the defendant's negligence in fact caused the third person's injuries or death and the plaintiff's emotional injury; and (2) that the third person's injury or death and the plaintiff's emotional injury were the proximate and foreseeable results of defendant's negligence. *See id.* Further, the *Camper* court held that recovery is allowed only where the plaintiff suffered serious or severe emotional injuries, which occurs when "a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case," and that the claimed injury must be supported by expert medical or scientific proof. *Id.* (citations omitted).

With its holding, the *Camper* court did not necessarily abandon the "zone of danger" approach to negligent infliction of emotional distress cases. Instead, the court determined that the principles of the "zone of danger" approach should be incorporated into a case's analysis as a way of defining and limiting the elements of duty and proximate cause. *See id.* at n. 2. The *Camper* court, however, reserved the specifics of such incorporation for discussion in a later case. That later case was *Ramsey v. Beavers,* 931 S.W.2d 527 (Tenn.1996).

In *Ramsey,* the Tennessee Supreme Court determined that the principles of the "zone of danger" approach were helpful in determining foreseeability. The court opined that establishing foreseeability required consideration of three factors, namely, (1) the plaintiff's physical location at the time of the accident and his awareness of the accident, (2) the seriousness of the injury to the third party, and (3) the plaintiff's relationship to the injured third party. *See id.* at 531.

On appeal, the Sellers argue that *Ramsey* stands for the proposition that a plaintiff *must* prove all three factors in order to establish foreseeability. A careful reading of *Ramsey* insists otherwise. The *Ramsey* court requires consideration of a number of relevant factors of which the plaintiff's location at the time of the event and his awareness of the accident are considered essential. Because these two factors are considered essential for the determination of foreseeability, the court explained that the plaintiff *must* establish that he was sufficiently close to the event to allow for sensory observation and that the injury to the third party was, or was reasonably perceived to be, serious or fatal. Although the court recognized that most jurisdictions require the plaintiff to have a close relationship with the third party, it did not expressly state that a plaintiff in Tennessee must have had a close relationship

with the third party in order to establish foreseeability. To hold that *Ramsey* requires proof of all three factors before foreseeability can be established would be contrary to *Camper v. Minor* as the plaintiff in that case was a complete stranger to the third party but yet was allowed to recover his damages for negligent infliction of emotional distress. Furthermore, in applying *Ramsey,* we held in *McCracken v. City of Millington,* 1999 WL 142391, at *1 (Tenn.Ct.App. Mar.17, 1999), that "[i]n determining whether the plaintiff's emotional injury was foreseeable, the trier of fact *should* consider (1) the plaintiff's physical location at the time of the injury-producing event as well as the plaintiff's awareness of the injury-producing event, (2) the seriousness of the third party's injury, and (3) the nature of the plaintiff's relationship with the injured third party." *Id.* at *10 (emphasis added). As concerns the third factor, we believe that the nature of the plaintiff's relationship with the third party should play a pivotal role in determining the *amount* of damages to award, rather than being a prerequisite for establishing foreseeability as the Sellers suggest.

*Thurmon v. Sellers*, 62 S.W.3d 145, 162 -64 (Tenn. Ct. App. 2001).

According to this court's analysis of negligent infliction of emotional distress requirements in *Sellers*, it is clear that the Estate's Motion to Dismiss pursuant to Rule 12.02(6) should have been denied.  In *Pendelton v. Mills*, we stated:

A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts.  *Winchester v. Little*, 996 S.W.2d 818, 821-22 (Tenn. Ct. App. 1998); *Smith v. First Union Nat'l Bank*, 958 S.W.2d 113, 115 (Tenn. Ct. App. 1997). Accordingly, courts reviewing a complaint being tested by a Tenn. R. Civ. P. 12.02(6) motion must construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, *Stein v. Davidson Hotel*, 945 S.W.2d 714, 716 (Tenn. 1997), and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts.  Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure § 5-6(g), at 254 (1999).

*Pendelton*, 73 S.W.3d at 120.

The facts in this case, according to the Complaint, are particularly egregious.  Mr. Scarlett had asked Mrs. Lourcey to call 911 because he told her his wife was having a seizure.  As Mrs. Lourcey spoke with the 911 operator, to potentially save Mrs. Scarlett's life, Mr. Scarlett shot his wife in the head and then, while facing Mrs. Lourcey, shot himself in the head.

Mrs. Lourcey was not merely a witness to the shooting and the suicide.  In this particular situation, Mr. Scarlett actually invited Mrs. Lourcey to become a participant in the incident that caused Mrs. Scarlett's injury.  Therefore, Mrs. Lourcey did not only witness the incident, but was

also a direct participant in the gruesome scene of the attempted murder/suicide from beginning to end.

As stated in *Thurmon*, a plaintiff must prove two things to recover for emotional injuries: "(1) that the defendant's negligence in fact caused the third person's injuries or death and the plaintiff's emotional injury; and (2) that the third person's injury or death and the plaintiff's emotional injury were the proximate and foreseeable results of defendant's negligence." *Thurman,* 62 S.W.3d at 162 (citing *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn.1996)). It is clear that the first requirement is met. The facts included in the Complaint taken as true would support a conclusion that Mr. Scarlett caused Mrs. Scarlett's injuries.

Turning to the question of foreseeability as a component of an emotional injury cause of action, we noted in *Thurmon* that an individual need not prove a relationship to the injured party to have a cause of action, but rather that issue is reserved in determining the amount of damages. Therefore, a plaintiff need only prove proximity and awareness of the injury-producing event and the seriousness of the third party's injury to have a cause of action. When one assumes the facts contained in the Complaint are true, Mrs. Lourcey was a direct participant in the incident and she was quite aware of the events as they were occurring. Therefore, the first requirement is met. The Complaint also states that Mr. Scarlett shot Mrs. Scarlett in the head, that is adequate evidence of a severe or fatal injury if taken as true.

The material factual allegations in Appellants' complaint construed liberally and taken as true support a cause of action. We believe Appellants should be able to proceed then with their attempt to prove the facts alleged in the complaint.

### III.
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

We now turn to the Appellants' intentional infliction of emotional distress claim. As stated above, we do not need to find that the Appellants have proven they can recover based on their Complaint, but merely whether the Complaint states a cause of action if all allegations are interpreted liberally and are taken as truthful. *Pendelton*, 73 S.W.3d at 120.

In *Medlin v. Allied Investment Co.*, 398 S.W.2d 270 (Tenn. 1966), the Tennessee Supreme Court recognized the tort of outrageous conduct (also known as intentional infliction of emotional distress). The Court adopted the threshold standard for outrageous conduct as stated in Restatement (Second) of Torts:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous.'

*Medlin*, 398 S.W.2d at 274.

In *Bains v. Wells*, 936 S.W.2d 618 (Tenn. 1997), our Supreme Court set out the elements for intentional infliction of emotional distress. The Court stated:

> [T]here are three essential elements to a cause of action: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury.

*Bains*, 936 S.W.2d at 622.

Appellee cites several cases where outrageous conduct has been found. These occasions include, a mother being shown her deceased baby preserved in formaldehyde in a jar, *Johnson v. Woman's Hospital*, 527 S.W.2d 133 (Tenn. Ct. App. 1975), a mother being erroneously informed her daughter's death was the result of sexual assault and suffocation, *Dunbar v. Strimas*, 632 S.W.2d 558 (Tenn. Ct. App. 1981), and a photo store employee informing a woman that her film was unable to be developed when in actuality the partially nude photos were kept by the employee and shown to other acquaintances of the customer, *Dunn v. MotoPhoto, Inc.*, 828 S.W.2d 747 (Tenn. Ct. App. 1991).

We do not see how the current facts cannot be considered outrageous conduct in light of previous decisions when interpreted liberally and taken as truthful. It is clearly outrageous to ask an individual to call 911 to help your wife and then turn around and attempt to kill her yourself. Intentionally taking someone's life is clearly not acceptable behavior in our community as it is given the harshest penalty under our criminal law. We believe that Mr. Scarlett shooting his wife in the head and then himself in the head directly in front of a person he asked to call 911, is conduct "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community." Therefore, the trial court erred in dismissing the complaint. When these facts are taken as truth and interpreted liberally there is support for a cause of action of intentional infliction of emotional distress.

For these reasons, we reverse the decision of the trial court and remand for further proceedings in accordance with this opinion. The costs of this appeal are taxed to the Appellee, Estate of Charles Scarlett.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.