IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 11, 2007 Session

# AMBER HOBBS, ET AL. v. SETON CORPORATION d/b/a BAPTIST HOSPITAL, ET AL.

Appeal from the Circuit Court for Davidson County
No. 03C-3238     Marietta Shipley, Judge

No. M2006-01548-COA-R3-CV - Filed January 27, 2009

This is a companion case to *Filson v. Seton Corp. d/b/a Baptist Hospital*, No. M2006-02301-COA-R9-CV.  Both cases were brought by mothers of newborns against the hospital where the babies were born, and both arose from the same incident.  Employees of the hospital mistakenly brought the wrong infant to a mother for feeding.  In the case before us, Ms. Hobbs, the mother of the child who was mistakenly taken to the wrong mother, claimed emotional distress on her own behalf and negligence and battery on behalf of her child.  The hospital admitted a breach of the standard of care, but argued that the plaintiffs did not suffer any actual damages because the mistake was corrected within a very short time after it was made.  The trial court dismissed all the claims on summary judgment.  Ms. Hobbs argues on appeal that the trial court erred in dismissing the claims for negligence and battery that she filed on behalf of her infant child.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., joined.  WILLIAM B. CAIN, J., not participating.

Richard L. Colbert, Courtney Lynch Wilbert,  Nashville, Tennessee, for the appellants, Amber Hobbs and Chloe King.

Mary Martin Schaffner, Nashville, Tennessee, for the appellee, Seton Corporation, d/b/a Baptist Hospital.

## OPINION

### I. AN ERROR AT THE HOSPITAL

On August 15, 2003, Amber Hobbs gave birth to her first child, Chloe King, in Baptist Hospital. On the same day, Sonja Filson delivered a child in the same hospital. In the early morning hours of August 17, a nurse at Baptist mistakenly delivered Chloe from her crib in the Baptist Hospital nursery to the room of Sonja Filson. Believing that the infant was her own child, Ms. Filson attempted to nurse her.[1] Chloe had not previously been breastfed and was cranky and irritable. After a few minutes Ms. Filson realized that the infant she was feeding was not her own.

When Sonja Filson informed the nurses of her discovery, they checked Chloe's identification bracelets and realized there had been a mistake. They changed Chloe's clothes and linen, and a nurse then suctioned Chloe's stomach to remove Ms. Filson's breast milk. The purpose of the suctioning was to reduce the time that the infant was exposed to foreign breast milk, because infection can be transmitted by body fluids.

After Chloe's stomach was suctioned, two nurses took Chloe to Amber Hobbs' room, woke her, and told her what had happened. The nurses apologized and told Ms. Hobbs a pediatrician had been called. Ms. Hobbs stated in deposition that when Chloe was returned to her, the infant was very uneasy, physically exhausted, irritable, fussy, on edge, and shaken up. The doctor who was called, Dr. Hain, assured Ms. Hobbs that Chloe was all right and that they were going to do blood work on the woman who had breast fed her baby to detect any possibility of infection. The subsequent blood work performed on Ms. Filson showed no risks of infection or other problems.

### II. COURT PROCEEDINGS

On November 12, 2003, Amber Hobbs filed a complaint against Baptist Hospital in the Circuit Court of Davidson County. She sought relief on her own behalf for negligent and intentional infliction of emotional distress and on her baby's behalf for negligence and battery. Her complaint was subsequently amended to name Seton Corporation, the owner of Baptist Hospital, as the proper defendant.

Sonja Filson and her husband subsequently filed their own complaint in the same court. *See Filson v. Seton Corp. d/b/a Baptist Hospital*, No. M2006-02301-COA-R9-CV. The trial court ordered that the two cases be consolidated for discovery purposes. The hospital filed motions for summary judgment in both cases. The hospital argued in part that actions for negligent or intentional infliction of emotional distress were only available for plaintiffs who could prove "serious or severe emotional injury" and that the claim of Ms. Hobbs did not rise to that level, relying on *Ramsey v. Beavers*, 931 S.W.2d 527 (Tenn. 1996) and *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996).

---

[1] Ms. Filson testified by deposition that Chloe and her own child were of almost identical weight and hair color.

-2-

On February 24, 2006, the trial court conducted a hearing on the pending motions for summary judgment. The court's memorandum opinion addressed both the *Filson* case and the present case. The court granted summary judgment to the hospital on Ms. Hobbs' claims for intentional and negligent infliction of emotional distress, finding "by an objective standard that she did not sustain a severe or serious emotional injury." However, the court left intact the minor child's claim for negligence and battery arising from having her stomach suctioned to remove the foreign breast milk.

The hospital subsequently filed a motion to alter or amend the trial court's order asking the court to dismiss the child's battery and negligence claims. After another hearing, the trial court granted the hospital's motion and dismissed the claims. The court found that "the nurses did not intend to make a harmful contact with the baby by suctioning the baby to clear any foreign breast milk from the baby's stomach," that a general consent form had been executed allowing procedures to be performed on the baby, and that the physician's orders allowed suctioning as needed. This appeal followed.

## III. STANDARD OF REVIEW

The standards for granting summary judgment are well-known. A party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005); *BellSouth Advertising & Publishing Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003).

A party seeking summary judgment must demonstrate the absence of any genuine and material factual issues. *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998) (citing *Byrd v. Hall*, 847 S.W.2d at 214). To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 9 (Tenn. 2008). As to the second method, the standard is whether the moving party establishes that the nonmoving party *cannot establish* an essential element *at trial*, not whether the nonmoving party's evidence *at the summary judgment stage is sufficient* to establish an essential element. *Id.*, at 7.

However, "[w]hen the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be must be resolved by the trier of fact." *Staples v. CBL & Associates*, 15 S.W.3d 83, 86 (Tenn. 2000) (citing *Byrd v. Hall*, 847 S.W.2d at 215). If, and only if, the moving party successfully negates an essential element of the nonmoving party's claim or

demonstrates the nonmoving party's inability to prove an essential element at trial, the burden shifts to the non-moving party to at least create a dispute of fact as to the element. It may do so in several possible ways, such as by

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party;
> (2) rehabilitating the evidence attacked by the moving party;
> (3) producing additional evidence establishing the existence of a genuine issue for trial; or
> (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*McCarley v. West Quality Food Service*, 960 S.W.2d at 588.

If the moving party does not meet its burden, however, there is no shifting of the burden to produce evidence, and it is premature to examine the sufficiency of the evidence presented by the nonmoving party, here the plaintiff, at the summary judgment stage. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d at 7 (discussing its decision in *McCarley*).

In this case, as we shall see, the hospital presented evidence that successfully negated an element of the child's battery and negligence claims, and the mother, on her child's behalf, was unable to rehabilitate her own evidence or to point to or produce additional evidence that could have enabled her to avoid summary judgment.

## IV. THE NEGLIGENCE CLAIM

The only issue Ms. Hobbs raises on appeal is the trial court's decision to grant the hospital summary judgment on the negligence and battery claims she filed on behalf of her daughter, Chloe King. Thus, Ms. Hobbs' own claims for the emotional distress she may have suffered upon learning of the hospital's mistake are not before us. We will discuss the child's negligence claim first.

In order to prevail on a negligence claim, the plaintiff must establish all the elements of the alleged tort. Those elements have been described as follows: (1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. *Hale v. Ostrow*, 166 S.W.3d 713, 716 (Tenn. 2005); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

There can be no doubt that Baptist Hospital owed a duty to ensure the safety of all the infants under its care, including Chloe King. Further, the hospital has admitted that it was negligent in bringing the infant to Ms. Filson's hospital room. To put it another way, it admitted that its conduct breached the duty of care. The hospital argues, however, that it is entitled to summary judgment because Chloe King suffered no injury or loss.

Ms. Hobbs alleges that the injury suffered by Chloe was the pain the infant experienced from the suctioning of her stomach. The hospital submitted evidence to negate this element of negligence in the affidavit of Dr. Jorge Rojas, a physician certified in neonatal and perinatal medicine. Dr. Rojas reviewed the hospital records for Amber Hobbs and Chloe King, as well as Chloe's pediatric records for her first year. Among other things, his affidavit stated that "[s]uctioning is performed on virtually every newborn and does not cause the baby any pain or suffering or any emotional or physical strain." Ms. Hobbs did offer any evidence to refute the affidavit of Dr. Rojas.

Ms. Hobbs testified in her deposition that when Chloe was brought to her after the suctioning, she was "uneasy, physically exhausted, irritable, fussy, on edge, and shaken up," and she concludes that this was because of the pain of suctioning. However, Ms. Hobbs had no knowledge of the infant's disposition before her stomach was suctioned. According to the deposition testimony of Sonja Filson, the infant was crying when she was brought to Ms. Filson's room, and the nurses told her that they were bringing her to nurse at that time because she was crying and the nurses had not been able to get her to stop. Ms. Filson also testified that Chloe remained cranky and irritable during breastfeeding. Ms. Hobbs was therefore unable to show that the suctioning increased the infant's discomfort.

Ms. Hobbs also argues that her baby girl must have suffered pain from the suctioning because of the very nature of the procedure that was performed. In referring to the procedure, the mother states that the nurses "pumped" the infant's stomach. However, the deposition testimony of neonatal nurse Caroline Humphries, who performed the procedure, describes it quite differently.

Ms. Humphries testified that she "suctioned" the infant's stomach using a small, flexible tube that's "very tiny, about a quarter of the diameter of my pinky, and it's real soft. You can wrap it around your finger." Using the tube, the stomach contents were slowly suctioned out, with "less pressure than sucking on a straw." The nurse testified that the procedure was not a painful one, in part because she was able to do it very slowly, which would probably not be true in the case of an emergency, such as a choking incident. Dr. Rojas' expert testimony also showed that the suctioning does not cause pain.

Ms. Hobbs also cites the hospital's "Care Path Orders" to support her contention that the suctioning that Chloe experienced had to have been painful to her. These standing orders for all newborns state that "prior to pain causing procedure (heel-lancing, IM injection, blood draw, suctioning, urinary cath, other pain causing event)" a solution of sugar water is to be administered to the infant.

The hospital observes, however, that the order does not reference the distinction between suctioning of the trachea and lungs on the one hand, and suctioning of the stomach on the other. The hospital contends that the order cannot be construed to refer to stomach suctioning because the effect of such a procedure would be to remove the sugar water from the baby's stomach. Ms. Hobbs did not offer any affidavits to contradict the hospital's interpretation of its own standing order.

In sum, the hospital has presented evidence to refute every argument presented by Ms. Hobbs to prove that her baby suffered injury from the suctioning performed on her on August 17, 2003. The hospital has, through its evidence, negated the essential element of injury. Ms. Hobbs has not been able to rehabilitate her evidence or to present additional evidence of injury. For the purposes of summary judgment, the failure of proof concerning an essential element of a case renders all other facts immaterial. *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn. Ct. App. 1995). We therefore conclude that the trial court correctly granted the hospital summary judgment on the appellant's negligence claim.

## V. THE BATTERY CLAIM

Ms. Hobbs also argues that by suctioning Chloe, the hospital committed a battery against the infant. In the context of medical care, "[a] medical battery occurs when a physician performs an unauthorized procedure."[2] *Church v. Perales*, 39 S.W.3d 149, 159 (Tenn. Ct. App. 2000). Since the issue hinges on what the patient knew, a medical battery claim does not require expert proof to support the claim. *Id*. The inquiry is generally understood to be whether the patient was aware the procedure was going to be performed and whether the patient authorized the procedure. *Blanchard v. Kellum*, 975 S.W.2d at 524. If the answer to either of these questions is no, then the claim is classified as a medical battery. *Id*.

The nurses in this case did not ask Ms. Hobbs for her specific consent before suctioning Chloe. However, they were operating under a General Consent for Medical Care that Ms. Hobbs executed when she was admitted to the hospital. The form authorized the hospital and its employees to perform any tests or procedures authorized by her doctor. Further, according to the affidavit of Dr. Rojas,

> the Newborn Care Path used at Baptist Hospital and ordered by each patient's physician contains a standard order allowing the nurses to suction a baby when, in the judgment of the nurse, it is considered necessary or desirable. Thus, suctioning a baby's stomach does not require the informed consent of the mother, a specific order from the baby's physician, or the physician's supervision.

Nurse Humphries suctioned Chloe's stomach pursuant to a physician's "PRN" order. The letters PRN stand for a Latin term that means "as needed" or "when necessary." Ms. Hobbs contends that the nurse's actions exceeded the scope of the consent she executed because suctioning was not

---

[2]This cause of action is not to be confused with the tort involving lack of informed consent which occurs "when the patient is aware that a procedure is going to be performed but is unaware of the potential risks associated with the procedure." *Church*, 39 S.W.3d at 159; *Blanchard v. Kellum*, 975 S.W.2d 522, 524 (Tenn. 1998). *See* Tenn. Code Ann. § 29-26-118 (pertaining to consent in a medical malpractice action.)

necessary. However, the evidence indicates otherwise.[3] Ms. Hobbs focuses on the use of the word "desirable" in the above passage from the affidavit of Dr. Rojas to suggest that he mischaracterized the Newborn Care Path by implying that it permits suctioning when it is not necessary, but merely desirable. However, she does not even attempt to explain how that distinction applies to the present case. Ms. Hobbs also relies on another portion of the affidavit of Dr. Rojas to argue that the suctioning was unnecessary:

> In all probability, Chloe did not sustain any injury as the result of ingesting breast milk from a woman who was not her mother or as a result of having her stomach suctioned to remove the breast milk. Chloe will not require further medical attention due to unknown effects or potential diseases or disorders that might possibly have been transmitted from the woman who mistakenly breastfed her. Thus Chloe's mother will not incur future costs for additional care for Chloe as the result of ingestion of breast milk.

Dr. Rojas' affidavit was prepared after he reviewed Baptist Hospital's records and the records of Chloe's pediatrician. By that time it had been determined that there were no pathogens in Ms. Filson's breast milk and Chloe's subsequent history gave additional assurances of her normal development. By viewing the events of August 17, 2003 in hindsight, one could possibly say that the suctioning had been unnecessary. But at the time the decision to suction was made, it was unclear whether or not the infant had been exposed to the possibility of infection, and the nurses on duty determined that the procedure was needed for Chloe's protection. Ms. Hobbs' attorney even admitted at oral argument that the Newborn Care Path placed the decision to suction within the nurse's discretion. We therefore conclude the trial court did not err in dismissing the child's battery claim.

## IV.

The judgment of the trial court is affirmed. We remand this case to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Amber Hobbs.

_____
PATRICIA J. COTTRELL,

---

[3]Ms. Hobbs' attorney contended during oral argument that it is inherently harmful for a newborn to be breast fed by a stranger, thus suggesting that such feeding in and of itself amounts to a battery. While we do not necessarily agree with that statement, it appears to us that such a contention undercuts her argument that the suctioning was unnecessary.